*In re* HATTIE CIANCANELLI.—(THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *v.* HATTIE CIANCANELLI, Respondent-Appellant.)

(No. 60118;

First District (5th Division)—February 28, 1975.

Thomas J. Grippando, of Legal Assistance Foundation, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Barry Rand Elden, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Respondent appeals from an order committing her to the custody of the Department of Mental Health as a person in need of mental treatment pursuant to the Mental Health Code. (Ill. Rev. Stat. 1973, ch. 91½.) She contends: (1) that she was deprived of her privilege against self-incrimination when she was required to testify for the State, and (2) that she was deprived of her due process rights when the court refused to instruct the jury to apply a standard of proof beyond a reasonable doubt.

Victor Ciancanelli, respondent's son, filed a verified petition for the hospitalization of respondent alleging that on October 8, 1973, she had threatened people. Petitioner's sworn statement filed with the petition alleged that respondent had refused to see a doctor and that she "says [her] sons are being held prisoner [and being] tortured, says God sends pains which tell her what to do, threatens people, says they are enemy plants [and] she is not afraid to die [and] will fight them to the end, was hospitalized 1963-1965 in a psychiatric hospital [and] now refuses to take medicine." Pursuant to a court order, respondent was taken into custody. Two doctors examined her and both filed certificates indicating that respondent needed mental treatment.

The matter proceeded to trial before a six-man jury as prescribed in section 9—2 of the Mental Health Code (Ill. Rev. Stat. 1973, ch. 91½, par. 9—2) where the following pertinent evidence was adduced.

For the State:

*Hattie Ciancanelli*

She is respondent in the instant proceeding and testified over objection by her counsel. On her request she was permitted to read a statement to the jury. The statement is incoherent and difficult to understand. She stated that she is being held illegally because the petition did not name the person she was accused of threatening; she did not threaten anyone; and her son did not see her on October 8, 1973. She has seen her son only twice in the last year (on July 4, and on the day she was taken into custody). She has met him occasionally at the Northwestern Station at which time the F.B.I. is with him. The police "snatched" her from

her apartment because the F.B.I is protecting her husband who "snitched" on four people while he was in prison and those people died. The F.B.I. has harassed her and her sons since 1957; the F.B.I. controls her sons' minds and caused the petition against her to be filed; F.B.I. agents live with her sons and tricked them into moving into the suburbs. Her medical records have been altered; her doctors are "framing" her; and her husband and son have the same social security numbers.

Upon examination by the assistant States' attorney, she complained of being tortured since 1957, but admitted that she had not seen an F.B.I. agent in 10 years. She blamed the F.B.I. for certain incidents which occurred at the Hospital since she was taken into custody, but she could substantiate F.B.I. harassment only by saying that people talked about her behind her back.

*Barbara Graves*

She is a mental health specialist at Tinley Park Mental Health Center. She interviewed respondent, who is in good physical condition, on several occasions at the Center during which time respondent was "cooperative to the point of being pleasant." During these interviews respondent complained that the F.B.I. was responsible for the commitment petition and had put a camera in her apartment. The witness observed respondent accuse another patient who had been bothering her of being planted there by the F.B.I. but the witness did not observe respondent threaten anyone. Particularly in view of the fact that respondent had not paid her rent, the witness was of the opinion that respondent's fixation with a F.B.I. conspiracy against her would make it difficult for her to cope with life outside a mental institution and expected respondent to have difficulty keeping up her apartment. She admitted, however, that while at the hospital, respondent had taken care of herself.

*Mehdi Golchini*

He is a licensed physician who has been practicing psychiatry for 10 years. Although he was not involved in treating respondent, he interviewed her for the purpose of reporting to the court. In his opinion, respondent is a schizophrenic reaction, paranoid type who is potentially dangerous to herself and others. He based his opinion upon the fact that respondent is delusional; that she complained of being tortured, but he could observe no evidence of physical torture; and that she viewed the world as an extremely hostile place which would tend to make her angry. He admitted that defendant had taken care of herself fairly well and that he knew of no evidence of past acts of violence.

Respondent on her own behalf:

*Hattie Ciancanelli*

She withheld her rent because she wanted to come to court; but when

she was taken into custody, she gave her son the money to pay for her rent. She does her own housekeeping and shopping, and she is not afraid to leave her apartment. She does not own a weapon, did not threaten anyone, and would never injure anyone. She saw an F.B.I. agent in a grocery store 10 years ago, and she is afraid her son has the wrong social security number.

At the close of this evidence, the court denied respondent's request to have the jury instructed that proof beyond a reasonable doubt was the applicable standard of proof. The jury returned a verdict that respondent was a person in need of mental treatment, and upon that verdict, the court entered an order of commitment.

OPINION

Respondent has raised no issue regarding either the sufficiency of the pleadings employed in the instant case or the sufficiency of the evidence adduced at her commitment hearing. She is content to raise only issues of law.

She first contends that she was deprived of her privilege against self-incrimination when she was required to testify for the State. She argues that the Illinois Supreme Court's decision in *People ex rel. Keith v. Keith,* 38 Ill.2d 405, 231 N.E.2d 387, which resolved this issue against respondent, was in error in the light of a decision by a three-judge Federal district court *(Lessard v. Schmidt* (E.D. Wis. 1972), 349 F.Supp. 1078, 1100-1102).

The *Keith* decision specifically determined that the privilege against self-incrimination is inapplicable in commitment proceedings when the person alleged to be in need of mental treatment was required to testify for the State. The court noted, however, that such persons need not answer those questions which would expose them to criminal liability. We note, in the instant case, that none of respondent's answers exposed her to criminal liability.

The *Lessard* opinion, relying primarily upon the similarities to incarceration for criminal offenses, determined that the privilege against self-incrimination is also applicable to involuntary commitment proceedings. That opinion focused on the question of whether the privilege applies in commitment proceedings under Wisconsin law when a person alleged to be in need of mental treatment is ordered to be examined by a psychiatrist. We note that no question is raised in the instant case regarding the privilege as it relates to a psychiatrist's examination.

Unlike the Wisconsin statute, Illinois law preserves the civil rights of persons in need of mental treatment. (Ill. Rev. Stat. 1973, ch. 91½, par. 9—11.) It contains ample safeguards for such persons' due process

rights (See generally Ill. Rev. Stat. 1973, ch. 91½, arts. IX, X and XII), and takes pains to distinguish civil commitment from criminal incarceration. Therefore, we do not believe *Lessard* is applicable. However, even if it were applicable, we note that *Lessard* permits persons alleged to be in need of mental treatment to be examined by a psychiatrist if they consent to be examined after being informed of the privilege and of the effect of their statements. In the instant case, there is every indication that respondent would have so consented. She requested and was permitted to read a statement to the jury and she stated that she had withheld her rent in order to come to court to voice her complaints about the F.B.I. In the circumstances of the instant case, we do not believe respondent was deprived of her privilege against self-incrimination.

Respondent also contends that she was deprived of her due process rights when the court refused to instruct the jury that the standard of proof beyond a reasonable doubt was applicable. She argues that the decision of this court in *People v. Sansone*, 18 Ill.App.3d 315, 325-326, 309 N.E.2d 733, 740-741, was erroneous in light of *In re Ballay* (D.C. Cir. 1973), 482 F.2d 648, and *Lessard v. Schmidt* (E.D. Wis. 1972), 349 F. Supp. 1078, 1093-1095. She bases her argument on her belief that civil commitment proceedings are in the nature of criminal proceedings. She complains that commitment may be for an indefinite period, that social stigmas result from commitment, that civil rights are terminated, that psychiatric evidence is speculative, and that due process safeguards are lacking. We note that no specific reference was made at trial or has been made on appeal to the applicability of section 60 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 60).

■■ In *Sansone*, this court considered these arguments and, being fully aware of *Ballay* and *Lessard*, determined that proof beyond a reasonable doubt was not the proper standard of proof to be applied. The court based its conclusions upon an examination of the applicable law, the Mental Health Code of 1967. (Ill. Rev. Stat. 1973, ch. 91½.) The Code provides due process safeguards against the very abuses of which respondent now complains. (Ill. Rev. Stat. 1973, ch. 91½, pars. 9—7, 9—11, and generally, arts. IX, X and XII.) Moreover, the Code indicates that the legislature took pains to distinguish between civil commitment and incarceration for criminal offenses. In these circumstances, we cannot disagree with the *Sansone* decision. See *In re Sciara*, 21 Ill.App.3d 889, 316 N.E.2d 153; see also 68 Nw. U.L. Rev. 585, 631-634 (1973).

The order of the circuit court of Cook County is affirmed.

Affirmed.

DRUCKER and SULLIVAN, JJ., concur.