*In re* CHARLES STEPHENSON.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* CHARLES STEPHENSON, Respondent-Appellant.)

First District (1st Division) No. 60607

Opinion filed March 1, 1976.

Jerold S. Solovy, Richard T. Franch, Michael J. Rovell, and Jeffrey D. Colman, all of Chicago (Jenner & Block, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Sheldon Gardner, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE SIMON delivered the opinion of the court:

The respondent, Charles Stephenson, appeals from a judgment of the circuit court finding him a person in need of mental treatment and remanding him to the Department of Mental Health. The State's Attorney moved to dismiss this appeal as moot. The motion, supported by certified proof that the respondent was given an absolute discharge by the Department of Mental Health on August 6, 1974, was taken with the case. An appeal should be held moot only where there is no possibility that any collateral legal consequences will result. (*In re Ballay* (D.C. Cir. 1973), 482 F.2d 648.) This court in *In re Sciara* (1974), 21 Ill. App. 3d 889, 316 N.E.2d 153, held that the collateral-consequence exception must be applied on a case-to-case basis. The respondent might be called upon to disclose the judgment below that he was in need of mental treatment on an employment application or during a job interview. We, therefore, deny the motion of the State that the appeal be dismissed because it is moot, and proceed to a determination on the merits.

The respondent contends: (1) That the standard of proof required to show need of mental treatment is proof beyond a reasonable doubt and that the trial court erroneously applied a "preponderance of the evidence" test; (2) that even if the standard of proof required to show need of mental treatment is clear and convincing evidence rather than proof beyond a reasonable doubt, the proof failed to meet this requirement; (3) that the trial court committed reversible error in refusing to allow respondent to impeach his own expert witness by proof of a prior inconsistent medical opinion; and (4) that the trial court erred in allowing a lay witness to testify concerning an alleged murder committed by respondent in 1972.

This court held in *People v. Sansone* (1974), 18 Ill. App. 3d 315, 309 N.E.2d 733, that the standard of proof in a civil commitment proceeding is clear and convincing evidence. In reaching that conclusion, the court considered *In re Ballay* (D.C. Cir. 1973), 482 F.2d 648, cited by the respondent in this case and rejected the contention that proof must be beyond a reasonable doubt. Subsequent decisions of this court have followed *Sansone*. See *In re Ciancanelli* (1975), 26 Ill. App. 3d 884, 326 N.E.2d 47; *People v. Bradley* (1974), 22 Ill. App. 3d 1076, 318 N.E.2d 267; *In re Sciara* (1974), 21 Ill. App. 3d 889, 316 N.E.2d 153. The appropriate standard of proof is established by those decisions. We see no compelling reason to vary from these decisions by requiring proof beyond a reasonable doubt instead of by clear and convincing evidence.

The resolution of the other contentions advanced by the respondent requires a review of the evidence at the hearing required under the Mental Health Code. (Ill. Rev. Stat. 1973, ch. 91½, §9—6 and ch. 38, §1005—2—2.) A hearing was held on February 15, 1974. A witness testified that in November 1972 he was present in a liquor store when respondent walked in, stated, "This is it," pulled a shotgun and shot the owner, then turned and walked out.

The State then called Dr. Robert DeVito, a practicing psychiatrist, who had examined respondent on February 11, 1974. He expressed the opinion that the respondent was a "schizophrenic paranoid type" and "there is reasonable doubt as to whether he could control his actions in terms of being potentially dangerous to others or potentially dangerous to himself" if he was subjected to "normal stresses and strains of daily life." Dr. DeVito testified that, "There is a chance he might be dangerous to others if returned to society at this time." Dr. DeVito testified that his opinion was based upon the respondent's family history, an episode of mental illness while he was in the service, episodes of unusual behavior at the county jail in 1972 and 1973 including periods of insomnia and auditory hallucinations and eccentric answers to direct questions during a personal interview. Dr. DeVito also spoke with other staff members concerning the respondent's behavior in the facility to which he was assigned and looked at records at the Psychiatric Institute.

Respondent called Dr. V. Siomopoulos, a staff psychiatrist at the Institute, as an expert witness. Dr. Siomopoulos observed the respondent several times during formal psychiatric interviews and informally on a day-to-day basis over a period of 4 weeks. Counsel for respondent asked, "Based on a reasonable degree of psychiatric certainty and based upon your examination * * * can [respondent] reasonably be expected to intentionally or unintentionally injure himself now or within a reasonable time thereafter?" The doctor answered, "There is a reasonable ex-

pectation that Mr. Stephenson would respond in a psychotic manner to the usual stresses of life if he is not hospitalized * * * [T]here is a good possibility that if he became psychotic that he may become dangerous to himself or to others."

Dr. Siomopoulos was then asked by respondent's counsel whether he had previously expressed the opinion that respondent was not in need of mental treatment as defined in the Mental Health Code. He admitted that he had changed his opinion since talking to defense counsel several weeks earlier, but explained that he had just become "aware of the subtleties of paragraph 1—11 of the Mental Health Code" which provides that within a reasonable time after the hearing he "might" become dangerous to himself or others. Dr. Siomopoulos further explained that when he used the word "might" he meant that it was "within the context of reasonable expectation" that the respondent would become dangerous under the usual stresses and strain of life. Though Dr. Siomopoulos was unwilling to testify that the chance of respondent becoming psychotic was beyond a reasonable doubt, he reiterated that there was a "reasonable expectation that within a reasonable time from this hearing he would become psychotic."

■■ Supreme Court Rule 238, allowing a party to impeach his own witness, applies only to occurrence witnesses. The rule provides:

> "The party calling an *occurrence* witness, upon the showing that he called the witness in good faith and is surprised by his testimony, may impeach the witness by proof of prior inconsistent statements." (Emphasis added.)

The rule is specifically limited to forestall possible abuses in the area of expert witnesses. (Committee Comments, Ill. Ann. Stat., ch. 110A, §238, *Committee Comments* (Smith-Hurd 1968).) *No case which would permit a party to impeach his own expert witness* has come to our attention, and we conclude that the trial court did not err in refusing to permit the respondent to impeach his own expert, Dr. Siomopoulos, by proof of a prior inconsistent medical opinion given to respondent's counsel. The trial court permitted defense counsel to make an offer of proof concerning the earlier opinion of Dr. Siomopoulos. After examining that offer, we conclude that Dr. Siomopoulos gave a satisfactory explanation for the change in his opinion.

■■ Respondent next contends that the testimony concerning the alleged murder some 15 months prior to the commitment proceeding was prejudicial and reversible error. The purpose of the hearing was to determine whether the respondent was in need of mental treatment at that time, that is whether, intentionally or unintentionally, he was likely to cause physical injury to himself or others. The testimony permitted by

statute at such a hearing is in no way limited to expert witnesses dealing with the respondent's mental state. (Ill. Rev. Stat. 1973, ch. 91½, §9—4.) While evidence of the criminal charges alone would be insufficient evidence of need for mental treatment, "conduct which is the subject of criminal prosecutions may provide the basis for a medical opinion that a person may be likely to cause physical injury, and for a finding that a person is in need of medical treatment." *People v. Bradley* (1974), 22 Ill. App. 3d 1076, 1084, 318 N.E.2d 267.

Although the alleged offense occurred 15 months before the hearing, the facts of the shooting would be relevant because they could form part of the basis for a psychiatric diagnosis. Mental disorders of the type with which we are here concerned do not always suddenly appear full blown, but may develop over a period of time. There was no error in the admission of lay testimony concerning the facts which triggered the events leading to the commitment hearing.

Finally, the respondent urges that the State failed to establish by clear and convincing evidence that he was in need of mental treatment. The trial court stated that it was applying a preponderance of the evidence standard. On the basis of *Sansone,* the standard which should have been used is proof by evidence which is "clear and convincing." The State argues that the clear and convincing standard should not be applied to this case because the *Sansone* decision was not retroactive. This position is inconsistent with the State's reliance upon *Sansone* for the proposition that the standard is not beyond a reasonable doubt. Also, this issue has already been decided by implication in *Sciara* and *Bradley,* both of which applied the clear and convincing standard to cases arising before the *Sansone* decision.

■■ Although the trial judge failed to measure the evidence against the requirement that it be clear and convincing, the record establishes by clear and convincing evidence that the respondent was in need of mental treatment at the time of the hearing because there was a reasonable expectation that he would physically injure himself or others. (Ill. Rev. Stat. 1973, ch. 91½, §1—11.) The facts of the underlying murder charge established that respondent, apparently without provocation, entered a liquor store, shot the owner with a shotgun and then left. Both Dr. DeVito and Dr. Siomopoulos testified regarding their interviews with and observations of the respondent which formed the basis of their opinions. As to the possibility that respondent would cause physical injury to himself or others, Dr. DeVito testified that there was a "reasonable doubt" whether he could control his actions so as not to be potentially dangerous to himself or others when subjected to "normal stresses and strains of daily life." We interpret this testimony to mean

that the doctor reasonably doubted that respondent could control his actions so as not to hurt anyone.

Dr. Siomopoulos testified that he observed respondent over a period of 4 weeks and believed that there was a "reasonable expectation" that the respondent would respond in a psychotic manner if not hospitalized and that there was a "good possibility" that he might then become dangerous to himself and others. When the testimony of Dr. Siomopoulos is read in its entirety it is clear that he is of the opinion that there was a reasonable expectation that within a reasonable time respondent would physically injure someone if not hospitalized.

Respondent, however, points to the fact that neither doctor would state that he was convinced beyond a reasonable doubt that the respondent would become psychotic and dangerous, that Dr. DeVito stated that there was a "chance" he "might" be dangerous and that Dr. Siomopoulos testified that he "may" become dangerous. We find this argument unpersuasive for two reasons. First, the subject matter is not susceptible to rigid classification or prediction for its deals in expectations or possibilities with respect to future happenings. Quantification as to how positive each doctor was that respondent was dangerous would be impossible. Both doctors testified as clearly and concisely as possible without merely parroting the legalese set forth in the Mental Health Code. Second, the words used by the psychiatrists when read in context do not detract from their otherwise clear and convincing opinions. Even though the trial judge was of the opinion that a lesser degree of proof was required, the testimony established by clear and convincing evidence that respondent was in need of mental treatment at the time of the hearing. We, therefore, affirm the judgment of the court below.

Judgment affirmed.

GOLDBERG, P. J., and BURKE, J., concur.