*In re* HILARIO GARCIA, Asserted to be in Need of Mental Treatment.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* HILARIO GARCIA, Respondent-Appellant.)

First District (5th Division)   No. 77-700

Opinion filed April 21, 1978.

James J. Doherty, Public Defender, of Chicago (Andrew J. Kleczek, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Joan S. Cherry, and Armand L. Andry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

Respondent, Hilario Garcia, was found to be in need of mental treatment (Ill. Rev. Stat. 1977, ch. 91½, par. 1—11) after a hearing in the circuit court of Cook County on February 4, 1977. The issues presented for review are whether the appeal should be dismissed as moot because respondent was given an absolute discharge; whether respondent was proved to be the person alleged to be in need of mental treatment; and whether respondent was proved to be in need of mental treatment by clear and convincing evidence.

At the hearing, Dorothy Wynne, a social worker at the Tinley Park Hospital, testified that respondent was easily frustrated and frequently became angry. He told her he made atom bombs for the government after having enlisted in the service at 12½ years of age. He also said he is a famous screen playwright and wrote plays for famous actors.

Respondent's mother testified he had grabbed her around the neck and tried to choke her, and she had had to call the police. He also had jumped on her bed like a little boy, had talked to nonexistent persons and had burned papers in a frying pan. She stated he had been in the Tinley Park Hospital on two prior occasions and had been in the State hospital in Michigan at one time. She testified on cross-examination that she, too, had been in mental institutions in Michigan and Illinois over 12 years before.

Dr. Rolchini, a psychiatrist, testified respondent told him he was a screen writer who had written the script for the movie "Jaws" and had been a designer of great weaponry. During the interview respondent was extremely hostile and said that he had to get out of the hospital or something would happen and that he would get out one way or another. Dr. Golchini concluded respondent had a very low tolerance for frustration and suffered from delusions of grandeur, thought disorders and schizophrenia. He believed it was more than likely that respondent

would try to harm himself of others because he became extremely agitated and irritable when his demands were not met.

Respondent testified that his reference to making atom bombs for the government was just a joke, and that the papers he put into the pan and burned were parts of a script he was working on; he was afraid someone might read it if he merely put it into the trash. He stated he was told to burn papers in Fort Knox when he was in the service. He was in the service just four months but denied having received a psychiatric discharge.

He also denied choking his mother and explained he had only massaged her back. He stated she frequently screamed at him, talked in tongues, and was a religious fanatic. He explained she had threatened to put him in the hospital for no reason because she did not want him around.

Respondent filed a timely notice of appeal on February 4, 1977, and thereafter on February 24, 1977, he was given an absolute discharge.

OPINION

The State contends the appeal is moot and relies on *People ex rel. Craine v. Boyd* (5th Dist. 1976), 41 Ill. App. 3d 538, 353 N.E.2d 696. In that case the court invoked the case-by-case approach to the collateral consequences exception to the mootness doctrine enunciated in *In re Sciara* (1st Dist. 1974), 21 Ill. App. 3d 889, 316 N.E.2d 153. The court in *Boyd* held that where respondent had been hospitalized on previous occasions the consequences of being given an absolute discharge are actually favorable to respondent because it indicates he is no longer afflicted and is ready to take his place in society. Therefore, the State argues that no negative consequences flow from allowing the lower court order to stand in this case because respondent had been previously hospitalized on several occasions.

Nevertheless, to hold as the State suggests would tend to frustrate the legislative intention to grant review in mental health cases. The statute expressly provides:

> "Appeals from the final orders or judgments of the circuit court made and entered in proceedings under the Act may be taken by any person, including the person asserted to be mentally retarded, or in need of mental treatment, who considers himself aggrieved, in the same manner as in other civil cases." (Ill. Rev. Stat. 1977, ch. 91½, par. 2—3.)

Also see *In re Carter* (1975), 25 N.C. App. 442, 213 S.E.2d 409, 410, and Ill. Const. 1970, art. VI, §6.

Furthermore, the well-reasoned dissent in *Boyd* pointed out that *Sciara* had relied on *In re Ballay* (D.C. Cir. 1973), 482 F.2d 648, wherein the

court stated that a case is moot only if there is *no possibility* that any negative collateral consequences will be imposed.

■■■ It should also be noted that many commitments are for limited periods of time and may recur. In *Ballay* the court rejected the mootness argument in a mental health case based not only on the multitude of collateral legal consequences which may be imposed as a result of commitment but also on the fact that considerations of public importance ought not be defeated by short-term orders, capable of repetition, which are able to evade review. The court expressly rejected an argument that no negative collateral consequences will result when there have been prior commitments, suggesting that it is difficult to determine at what point the number of commitments would render a person's reputation to be irredeemable. (Also see *In re Hatley* (1977), 291 N.C. 693, 231 S.E.2d 633, and *Matter of Hogan* (1977), 32 N.C. App. 429, 232 S.E.2d 492.) We, therefore, hold that the mootness doctrine is not generally applicable to mental health cases and will review the merits of this case. See *In re Stephenson* (1976), 36 Ill. App. 3d 746, 344 N.E.2d 679, *aff'd* (1977), 67 Ill. 2d 544, 367 N.E.2d 1273, and *In re Graham* (1976), 40 Ill. App. 3d 452, 352 N.E.2d 387.

■■ Respondent first contends the State failed to prove he was the person alleged to be in need of mental treatment because there was no in-court identification. Although no witness specifically identified respondent as the person asserted to be in need of mental treatment, the circumstances of the hearing in which respondent was present and testified in response to the State's case established his identity beyond any doubt, and the issue is without merit.

Respondent next contends he was not proved by clear and convincing evidence to be a danger to himself or others or that he was unable to care for himself. Ill. Rev. Stat. 1977, ch. 91½, par. 1—11; *In re Stephenson* (1977), 67 Ill. 2d 544, 367 N.E.2d 1273; *People v. Sansone* (1974), 18 Ill. App. 3d 315, 309 N.E.2d 733.

■■ In this case, Dorothy Wynne, a social worker, testified that respondent got very angry, pounded on the table and told her he was a famous screen playwright and had also made atomic bombs for the government. Respondent's mother testified he jumped up and down on her bed like a little boy, talked to nonexistent people, burned papers in a frying pan, and on one occasion his attempt to choke her had necessitated a call to the police. Dr. Golchini testified respondent stated he had to get out otherwise something would happen and that he would get out one way or another. Respondent also told him he was a famous script writer and a designer of great weaponry. Dr. Golchini concluded respondent had a very low tolerance for frustration and suffered from delusions of

grandeur, thought disorders and schizophrenia, and would be more than likely to harm himself or someone else. After reviewing the record, we conclude Dr. Golchini's diagnosis of mental illness and his recommendation of hospitalization were based on the evidence and did not constitute mere speculation. Therefore, we find respondent was determined to be in need of mental treatment by clear and convincing evidence.

For these reasons the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

LORENZ and MEJDA, JJ., concur.