In re JOANNE PHILLIPS.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. JOANNE PHILLIPS, Respondent-Appellant.)

First District (1st Division) No. 77-1515

Opinion filed July 10, 1978.

James J. Doherty, Public Defender, of Chicago (James H. Reddy and Timothy P. O'Neill, Assistant Public Defenders, and Alan Cohen, research assistant, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Mary Ann Callum, and Ira H. Raphaelson, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BUCKLEY delivered the opinion of the court:

Respondent, Joanne Phillips, was adjudged in need of mental treatment and committed to the Department of Mental Health on August 10, 1977. (Ill. Rev. Stat. 1977, ch. 91½, par. 1—11.) Respondent does not contest that she was suffering from a mental disorder, but she contends the evidence was insufficient to show that she was unable to care for herself or was a danger to herself or others as a result of this disorder. The State maintains this case is moot because respondent was granted an absolute discharge from the hospital 3 months after her commitment.

The record shows that respondent had been previously hospitalized for mental disorders. Mamie Allen, a social worker at the Tinley Park Hospital where respondent was admitted at the time of the hearing, testified that respondent told her "something" about a concussion she would cause before the hearing, but during her 1-week observation of respondent she noted nothing unusual except respondent's evasiveness when talking of her problems. This witness said that respondent was feeding and clothing herself, but there was some question whether respondent was taking the prescribed medication.

Respondent's mother testified respondent lived with her. Respondent stopped taking her medication, claiming adverse side effects occurred.

Respondent was called as an adverse witness pursuant to section 60 of the Civil Practice Act. (Ill. Rev. Stat. 1977, ch. 110, par. 60.) Respondent explained the statement she made to the social worker as meaning she might have suffered a concussion from injuries she received. No further questions were directed to this matter. Respondent disclaimed any desire to harm herself or harm others except in cases of self-defense. If released, respondent said she would return to her mother's home to straighten out property matters.

Dr. Mehdi Golchini, a qualified psychiatrist, had examined respondent. He remarked that respondent had bizarre thoughts and auditory

hallucinations which signified chronic schizophrenia. Respondent told this witness she had no plans if released, but she would live in the streets. Dr. Golchini asserted that respondent could not care for herself properly. To his knowledge respondent had not attacked anyone and was eating properly. He was of the opinion that out-patient treatment would be beneficial if respondent could take her medication under supervision but if left alone on the street she would be self-destructive.

Respondent testified on her own behalf and denied wanting to harm herself or others, and expressed the view she could function properly if released. She said she would be an out-patient but would not take two specified drugs because she had suffered adverse side effects from them before including dizziness and chest pain. It would appear that her testimony was lucid.

■ ■ We reject the State's claim that this case is moot. In the recent decision in *In re Garcia* (1978), 59 Ill. App. 3d 500, 503, 375 N.E.2d 557, the applicable policy considerations regarding review of mental health commitments pursuant to section 1—11 of the Mental Health Code (Ill. Rev. Stat. 1977, ch. 91½, par. 1—11) were considered carefully and it was determined that the mootness doctrine was not generally applicable to such cases. It was reasoned that release of a person so confined should not be permitted to defeat review of such orders because such situations may often involve a series of short-term orders, and it is difficult to determine at what point the number of commitments would render a person's reputation irredeemable.

The State relies on *People ex rel. Craine v. Boyd* (1976), 41 Ill. App. 3d 538, 353 N.E.2d 696, as authority for the contrary proposition, that where the person appealing an order of commitment has been committed on prior occasions, such an appeal is moot if that person has been released from the period of commitment in issue. In *Boyd*, however, emphasis was placed on the fact that the respondent had previously been imprisoned for a sexual offense and he was given an absolute discharge by the Department of Mental Health. Accordingly, it was reasoned that, in that particular case, the respondent's future was brightened by the implication that his commitment had cured the condition leading to his criminal conviction, rather than clouded by any doubt concerning his mental condition that might arise from the fact of his commitment. *Boyd*, 41 Ill. App. 3d 538, 540, 353 N.E.2d 696.

■ ■ Moreover, the relationship between *Garcia* and *Boyd* is clearly not contradictory when one considers the framework of decisions in this area. The general rule that mootness will cause dismissal of an appeal (*Wheeler v. Aetna Casualty & Surety Co.* (1974), 57 Ill. 2d 184, 311 N.E.2d 134) is subject to an exception where collateral legal consequences survive the expiration of the order under review (*In re Sciara* (1974), 21 Ill. App. 3d

889, 316 N.E.2d 153.) That mental health commitment orders may have collateral consequences was recognized in *Sciara* and *In re Stephenson* (1976), 36 Ill. App. 3d 746, 344 N.E.2d 679, *aff'd* (1977), 67 Ill. 2d 544, 367 N.E.2d 1273. That such collateral consequences may exist even where the respondent has been committed several times before was recognized in *In re Graham* (1976), 40 Ill. App. 3d 452, 352 N.E.2d 387.

In this context, the language of *Garcia* that "the mootness doctrine is not generally applicable to mental health cases" (59 Ill. App. 3d 500, 503, 375 N.E.2d 557), stands for the proposition that cases involving mental commitment orders are a general exception to the mootness doctrine and *Boyd* assumes the character of an exception to that exception, and one that is not applicable to the facts of this case. See *In re Fields* (1978), 60 Ill. App. 3d 869, 377 N.E.2d 301.

In considering the merits of respondent's claim, we note that she does not suggest an absence of a mental disorder. Rather she asserts that clear and convincing evidence was not presented to show that, as a result of that disorder, she could not care for her physical needs or might physically harm herself or others. *In re Stephenson* (1976), 67 Ill. 2d 544, 367 N.E.2d 1273.

■■ The State, relying on *In re Doe* (1978), 56 Ill. App. 3d 1052, 372 N.E.2d 866, argues that her refusal to take medication for her mental disorder justified a conclusion that she was unable to care for herself. However, in *Doe* it was the respondent's failure to take medication for her hypertension and the potential resulting physical damage from such refusal which prompted the court to conclude she could not care for herself. Similarly, we reject the State's contention that respondent's uncertainty of living arrangements, if released, is a controlling basis to justify commitment.

■■ No evidence was introduced to show the reason for respondent's hospitalization at the time of the hearing. While Dr. Golchini expressed the view that respondent could not care for herself if released and would become self-destructive, there is a lack of significant evidence to justify these conclusions. After examination of the record, we believe the quantum of evidence to justify commitment is lacking.

For these reasons, the judgment of the circuit court of Cook County is reversed.

Reversed.

GOLDBERG, P. J., and O'CONNOR, J., concur.