THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* WILLIE NUNN, Respondent-Appellant.

First District (5th Division)   No. 80—1712

Opinion filed July 30, 1982.

James Prendergast, of Richard J. Prendergast, Ltd., and George E. Weaver, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David L. King, and Stephen R. Botti, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Respondent appeals from an order of the trial court remanding him to the Illinois Department of Mental Health (the Department) after a jury verdict finding him subject to involuntary admission. Several issues are presented for review, among which is that the State

failed to prove by clear and convincing evidence that respondent was in need of mental treatment. Since we find that the State failed to meet its burden and accordingly reverse, we need not consider the other contentions raised.

The record indicates that respondent was initially indicted for various felony offenses arising from an incident which occurred on April 9, 1978, when he allegedly abducted Chicago police officer Eugene Zaleski. Respondent was subsequently acquitted of those charges by reason of insanity, and thereafter the State petitioned for the involuntary admission of respondent to a mental institution.

At the hearing, Officer Zaleski testified that a man, whom he identified in court as respondent, drew a sawed-off shotgun as he and his partner were questioning him; that at gunpoint, respondent disarmed them and ordered Zaleski to drive him on a circuitous route through Chicago; and that respondent eventually was persuaded to release them, in return for which he was promised that he would be taken to a mental hospital.

Dr. Gilbert Bogen, a certified psychiatrist, testified that on April 10, 1980, he interviewed respondent for one hour to determine whether he had a mental disease and might be dangerous to himself or others; that respondent had a history of psychiatric hospitalization and was taking antipsychotic and anticonvulsive medication; that at the time of the abduction of Zaleski and his partner, respondent had lost his medication; that solely from the interview, he "could establish no opinion whatsoever on dangerousness;" that none of the reports he had read or people with whom he had spoken indicated respondent would resist taking his medication; that based upon a review of respondent's psychiatric records for the past 10 years, he was of the opinion that he was suffering from a mental illness—organic brain damage with possible seizure activity leading to violent behavior; that because of the mental disease, respondent was "extremely dangerous" and could reasonably be expected to harm himself or others in the near future; that respondent's illness would be controlled if he continued to take his medication; that within 24 to 72 hours after not taking such medication, respondent would not be able to control himself; and that respondent's conduct in abducting the officers on April 9, 1978, was due to his failure to take medication.

Dr. Mark Slutsky, a court-appointed psychiatrist, testified that he examined respondent, reviewed psychiatric reports and records concerning him, and spoke with other physicians who had examined him; that based on the interview, he concluded respondent was functioning at a stable level and "was not as disorganized as apparently he had

been in the past;" and that based on the examination and the review of respondent's records, he concluded that although respondent suffered from a mental illness, he presented no danger to himself or others then or in the future.

Dr. Jeffrey Spector, another court-appointed psychiatrist who examined respondent and reviewed various psychiatric reports concerning him, testified that he was aware respondent was taking medication; that based on the interview and review of the records, he was of the opinion that respondent did not present a danger to himself or others; that respondent would not repeat his allegedly violent behavior in the future; and that as long as respondent took his medication, he could be treated as an outpatient.

Two other witnesses who had known respondent since his incarceration two years earlier also testified. First, Captain Charles Dunnigan, who had been a shift commander at the Cook County Department of Corrections for 8 months in the division where respondent was held, testified that he knew of no occasion on which respondent had done violence to himself or others; that respondent had a reputation for nonviolence; that he could recall no instance in which respondent refused to take prescribed medication; and that incidents of violence or refusal to take medication would have been brought to his attention. Secondly, Ozarie Wherry, who was employed as a social worker for the Cook County Department of Corrections and was assigned to the division where respondent was held, testified that she had had daily contact with respondent; that she would have been told if he had refused to take his medication, but she knew of no such instance in which he had refused to do so; that respondent got along well with other people at the jail, obeyed rules, and had a reputation for being nonviolent; and that her knowledge of the alleged abduction in 1978 did not affect her opinion concerning his nonviolent character.

Respondent now appeals from the judgment entered upon the jury verdict finding him subject to involuntary commitment.

OPINION

At oral argument, it was brought to this court's attention that respondent has been unconditionally released by the Department. It is thus necessary to determine whether the case at bar is moot.

■ The mootness doctrine, which causes dismissal of an appeal, is generally not applicable to involuntary commitment cases (*In re Phillips* (1978), 62 Ill. App. 3d 408, 379 N.E.2d 97; *In re Garcia* (1978), 59 Ill. App. 3d 500, 375 N.E.2d 557), and it should not be applied where it would prevent issues capable of repetition from ever being

susceptible to appellate review (*In re Marquardt* (1981), 100 Ill. App. 3d 741, 427 N.E.2d 411). The exception to the mootness doctrine is of particular importance where commitment orders may have collateral legal consequences which survive the expiration of the order under review. (*In re Sciara* (1974), 21 Ill. App. 3d 889, 316 N.E.2d 153.) Furthermore, it has been held that even in the context of absolute discharge, collateral legal consequences may exist if the respondent was committed several times before, for at some point the number of commitments may make his reputation irredeemable. *In re Phillips* (1978), 62 Ill. App. 3d 408, 411, 379 N.E.2d 97, 99; *In re Graham* (1976), 40 Ill. App. 3d 452, 352 N.E.2d 387; *cf. People ex rel. Craine v. Boyd* (1976), 41 Ill. App. 3d 538, 353 N.E.2d 696 (mootness doctrine applied where respondent had been given absolute discharge, and his future was thus brightened by prospect that commitment had cured condition leading to criminal activity and subsequent imprisonment).

■ Here, we are unable to determine, as the mootness doctrine requires (*In re Fields* (1978), 60 Ill. App. 3d 869, 377 N.E.2d 301), that no collateral legal consequences will attend the order of the trial court. The record affords no guidance as to whether the commitment order in question may, for example, impair respondent's employment opportunities or reputation or increase the probability of recommitment. Accordingly, we will consider the present case as not being moot.

Turning to the merits, it is apparent that the State's position rests upon the conclusion that respondent is subject to involuntary commitment because he might fail to take prescribed medication and thus be a danger to himself or others. However, that proposition does not satisfy the standard which requires the State to prove respondent in need of hospitalization by clear and convincing evidence.

■ ■ Under the Mental Health and Developmental Disabilities Code, an individual is subject to involuntary admission if he is mentally ill and, because of such illness, he is reasonably expected to inflict serious harm upon himself or another in the near future or is unable to provide for his basic physical needs so as to avoid seriously harming himself. (Ill. Rev. Stat. 1979, ch. 91½, par. 1—119.) The State must prove such need for mental treatment by clear and convincing evidence. (Ill. Rev. Stat. 1979, ch. 91½, par. 3—808; *In re Stephenson* (1977), 67 Ill. 2d 544, 367 N.E.2d 1273.) Furthermore, a respondent is entitled to a current evaluation of his conduct and state of mind, including medical evidence that he presented a danger to himself or others as a direct result of the mental disorder. (*People v.*

*Butler* (1979), 69 Ill. App. 3d 556, 387 N.E.2d 908.) In other words, the decision to commit must be based upon a fresh evaluation of respondent's conduct and mental state. *People v. Bradley* (1974), 22 Ill. App. 3d 1076, 318 N.E.2d 267.

In the present case, Dr. Bogen testified that on the basis of his interview of respondent, he could not determine that respondent was dangerous but, upon reviewing respondent's records in conjunction with the interview, he concluded that respondent presented sufficient danger to require mental treatment. Dr. Bogen also opined that respondent suffered from organic brain damage which could reasonably be expected to cause respondent to inflict harm upon himself or others in the near future. Significantly, however, Dr. Bogen agreed with the conclusion of another psychiatrist that, based upon a reasonable degree of medical certainty, respondent posed no danger to himself or others and did not require hospitalization so long as he took his medication. That view was consistent with the opinions of Drs. Slutsky and Spector.

We think it clear that the commitment order in question was not based upon the danger respondent posed because of his mental disorder but, rather, upon the fact that he might inflict harm if he failed to take prescribed medication. There is no indication in the record, however, that respondent refused to take such medication. To the contrary, as much of the testimony at trial revealed, respondent appears to be a cooperative individual and one included to obey rules. The record further indicates that at the time of the alleged abduction, respondent had lost his medication and had been searching for it. Thus, Dr. Bogen's prediction that respondent would cease taking his medication in the future was unwarranted. In any event, the refusal to take medication is not sufficient to justify an order of commitment. (*In re Phillips* (1978), 62 Ill. App. 3d 408, 379 N.E.2d 97.) Such an order which rests upon the possibility or the prediction that an individual might fail to take medication could lead to the unacceptable result of permanent detention, and we note in this regard that the State does not suggest how the confinement of respondent in a mental institution would otherwise improve his condition.

In *Jackson v. Indiana* (1972), 406 U.S. 715, 32 L. Ed. 2d 435, 92 S. Ct. 1845, it was held that an individual found to be incompetent to stand trial cannot be indefinitely committed to a mental hospital but can only be held for a period of time reasonable to determine if there exists a substantial probability that he will attain such capacity in the foreseeable future. Implicit in that holding is the concept that such an individual cannot be hospitalized without at least receiving

treatment designed to restore competency. Analogously, in the present case, the State cannot successfully maintain that the potentially permanent institutionalization of respondent is justified by speculation that he may fail to take medication. Furthermore, as expressed by Dr. Spector, respondent would benefit from outpatient therapy, and his behavior would be controlled as long as he took his medication. Thus, while the medical opinion supporting the order of commitment was based upon direct observation of respondent's conduct (see *In re Love* (1977), 48 Ill. App. 3d 517, 363 N.E.2d 21), the State failed to establish by clear and convincing evidence that as a direct result of respondent's mental illness, he could reasonably be expected to inflict harm upon himself or others in the near future.

The order finding respondent in need of involuntary admission for mental treatment is reversed.

Reversed.

LORENZ and WILSON, JJ., concur.