# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Daniel K.*, 2013 IL App (2d) 111251

---

| | |
|---|---|
| Appellate Court Caption | *In re* DANIEL K., Alleged to be a Person Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellant, v. Daniel K., Respondent-Appellee). |
| District & No. | Second District<br>Docket No. 2-11-1251 |
| Filed<br>Rehearing denied | March 29, 2013<br>May 17, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The order granting respondent's petition for discharge from his involuntary admission pursuant to the Mental Health and Developmental Disabilities Code was reversed, where the trial court erred in rejecting the State's request to call respondent as a witness and excluding evidence as to the reasons for respondent's involuntary admission and evidence as to the consequences of his anticipated refusal to continue taking his medication after being discharged. |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 11-MH-595; the Hon. K. Patrick Yarbrough, Judge, presiding. |
| Judgment | Reversed. |

Counsel on Appeal

Joseph P. Bruscato, State's Attorney, of Rockford (Lawrence M. Bauer and Sally A. Swiss, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Veronique Baker and Teresa L. Berge, both of Guardianship and Advocacy Commission, of Rockford, for appellee.

Panel

JUSTICE HUDSON entered the judgment of the court, with opinion.

Presiding Justice Burke and Justice McLaren concurred in the judgment and opinion.

## OPINION

¶ 1    The State appeals the trial court's order granting respondent Daniel K.'s petition for discharge from involuntary admission under the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/1-100 *et seq.* (West 2010)). Respondent argues that the matter is moot, as he has already been discharged. We determine that two issues are reviewable. We hold that the court erred in disallowing evidence from the State about the reasons for respondent's admission and the potential effect of his failing to take medication. We also determine that the court improperly denied the State's request to call respondent as a witness. Accordingly, we reverse.

¶ 2                                I. BACKGROUND

¶ 3    On September 20, 2011, respondent was involuntarily admitted for a period not to exceed 90 days, and the court granted the State's request to administer psychotropic medication. On October 20, 2011, respondent filed a petition for discharge. The court ordered an examination and legal representation.

¶ 4    On October 25, 2011, a report was filed from Dr. William Welch, who wrote, based on a 15-minute interview and a review of respondent's medical records, that respondent was not reasonably expected to inflict serious physical harm upon himself or another in the near future. Welch also wrote that, although respondent was mentally ill, he would be able to provide for his basic physical needs and guard himself from harm without assistance. Welch noted that respondent was diagnosed with schizophrenia and was refusing to attend treatment groups, that respondent denied any current suicide or homicide ideation, and that he received disability payments, had a home to go to, and worked part time at various businesses.

¶ 5    On November 8, 2011, another report from Welch was filed, in which he stated his opinion that respondent was not subject to involuntary admission or continued hospitalization. Under the section for respondent's symptoms, Welch reported that respondent exhibited rational thoughts and a willingness to talk freely. His behavior was not problematic and he was generally calm and quiet, but he did not plan to follow up with

-2-

medication upon discharge.

¶ 6        On November 11, 2011, a hearing was held. Welch testified consistently with his reports and stated his opinion that respondent had stabilized due to his treatment and was suitable for discharge. Welch stated on cross-examination, without objection, that respondent did not plan to continue his medication when he was discharged and that taking the medication was critical to stabilizing his condition. Welch also testified that he did not have access to the petition that resulted in the admission, did not speak with respondent's treating psychiatrist or social worker, and did not know that respondent's mother, who was also his guardian, did not want respondent released and was fearful for his safety. However, Welch stated that this information would not impact his opinion, as he was evaluating respondent's current status and not what might happen in the future. Welch testified that respondent was taking haloperidol to control irrational thoughts and behavior and agreed that a person with irrational thoughts and behavior might be a danger to himself or others.

¶ 7        When Welch was asked on two occasions during cross-examination if he agreed that stopping the medication would result in a return to the behavior that caused respondent to be admitted in the first place, respondent's objections based on speculation were sustained. After hearing argument about the scope of the testimony, the court stated that it would allow testimony about respondent's medication, the symptoms it controlled, and respondent's intention not to take the medication, because Welch reached his opinion based on his interview of respondent and the information in his chart. But the court said that it would not allow speculation as to what would happen if respondent did not take his medication in the future. The court also sustained an objection, as beyond the scope, to the question of whether respondent could be placed in a less restrictive location.

¶ 8        The court determined that respondent made a *prima facie* case for discharge, and the State called respondent's treating psychiatrist, Dr. Howard Paul. Paul testified that he was board certified and had testified as an expert hundreds of times. He said that his specialty was in addiction medicine. The State sought to qualify Paul as an expert, and respondent objected on the basis that Paul was being called to testify as an occurrence witness, not as an expert. Other than providing notes about respondent in his medical chart, Paul had not provided a written opinion about the proceedings. The court found that Paul could testify about his contact with respondent and the opinions he had formed as a result, but that he had not been qualified as an expert in the field of psychiatry for any other purpose.

¶ 9        Paul testified about his interactions with respondent and the medications respondent was receiving, and he said that respondent did not think he was ill and would not continue treatment when discharged. However, when the State sought to elicit testimony about respondent's medical history or behavior before he was admitted, objections as to relevance were sustained on the basis that the issue before the court was his current condition. Objections as to speculation were also sustained in regard to questions about what would happen if respondent stopped taking his medication. The court stated that it was limited to looking at respondent's current condition. Another objection was sustained to questions about a less restrictive treatment alternative. When asked if relatives would help respondent if he were released, Paul began to say something about respondent's mother that was based on statements that she had made to social workers, and a hearsay objection was sustained.

The State did not make any argument that a hearsay exception applied. During the course of the testimony, there were also various objections sustained based on lack of foundation or because a question called for an expert opinion.

¶ 10    After Paul's testimony, the State requested to call respondent as a witness. Respondent's objection, that the State did not have a right to require him to testify, was sustained. The trial court, noting a lack of evidence that respondent was currently a danger to himself or others, granted the petition for discharge. The State appeals.

¶ 11                                    II. ANALYSIS

¶ 12    The State contends that the trial court's evidentiary rulings and denial of its request to call respondent as a witness prevented it from showing that the petition for discharge should have been denied. Specifically, the State argues that the trial court erred by (1) disallowing evidence about why respondent was admitted and what would happen if he stopped taking medication, (2) not allowing the State to call respondent as a witness, (3) refusing to qualify Paul as an expert, (4) sustaining a hearsay objection, and (5) granting the petition for discharge. The State acknowledges that the issues are moot but argues that exceptions apply.

¶ 13                   A. Exceptions to the Mootness Doctrine

¶ 14    The parties agree that the matter is moot because respondent has already been discharged. However, the State contends that we should review the issues under either the public-interest exception to the mootness doctrine or the exception for issues that are capable of repetition, yet evading review.

¶ 15    "An appeal is considered moot where it presents no actual controversy or where the issues involved in the trial court no longer exist because intervening events have rendered it impossible for the reviewing court to grant effectual relief to the complaining party." *In re J.T.*, 221 Ill. 2d 338, 349-50 (2006). Generally, courts of review do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided. *In re Barbara H.*, 183 Ill. 2d 482, 491 (1998).

¶ 16    Reviewing courts, however, recognize exceptions to the mootness doctrine: (1) the public-interest exception, applicable where the case presents a question of public importance that will likely recur and whose answer will guide public officers in the performance of their duties, (2) the capable-of-repetition exception, applicable to cases involving events of short duration that are capable of repetition, yet evading review, and (3) the collateral-consequences exception, applicable where the order could have consequences for a party in some future proceedings. See *In re Alfred H.H.*, 233 Ill. 2d 345, 355-62 (2009); *In re J.T.*, 221 Ill. 2d at 350. There is no *per se* exception to mootness that universally applies to mental health cases; however, most appeals in mental health cases will fall within one of the established exceptions to the mootness doctrine. *In re Alfred H.H.*, 233 Ill. 2d at 355. Whether a case falls within an established exception is a case-by-case determination. *Id.*

¶ 17    The public-interest exception allows a court to consider an otherwise moot issue when (1) the question presented is of a public nature, (2) there is a need for an authoritative

determination for the future guidance of public officers, and (3) there is a likelihood of future recurrence of the question. *Id.* "Where the substantive issue on appeal involves the State's compliance with the Code, the public interest exception applies." *In re Connie G.*, 2011 IL App (3d) 100420, ¶ 15.

¶ 18    In regard to the exception for issues capable of repetition, yet evading review, the exception has two requirements. "First, the challenged action must be of a duration too short to be fully litigated prior to its cessation." *In re Alfred H.H.*, 233 Ill. 2d at 358. "Second, there must be a reasonable expectation that 'the same complaining party would be subjected to the same action again.' " *Id.* (quoting *Barbara H.*, 183 Ill. 2d at 491). In a case where a party challenges the specific facts that were established during the discharge hearing, the exception generally does not apply, because the facts would necessarily be different in any future hearing and thus the present issue would have no bearing on similar issues presented in subsequent cases. *In re Val Q.*, 396 Ill. App. 3d 155, 160-61 (2009); see also *Alfred H.H.*, 233 Ill. 2d at 360 (applying this rule to involuntary admission hearings). However, when a purely legal question is raised, such as an issue of statutory interpretation, the exception can apply because the court will likely again commit the same alleged errors. See *In re Jonathan P.*, 399 Ill. App. 3d 396, 401 (2010).

¶ 19    In regard to the court's disallowing evidence about why respondent was admitted and what would happen if he stopped taking medication, the issue involves a determination of the scope of discharge proceedings under the Code. Accordingly, the public-interest exception to the mootness doctrine is applicable. Likewise, the exception applies to the court's denial of the State's request to call respondent as a witness. Accordingly, we address those issues. The remaining three issues, conversely, do not share such characteristics. Hence, they do not fit within the public-interest exception.

¶ 20    Moreover, the remaining three issues are also fact specific. The court's refusal to certify Paul as an expert does not present a purely legal question or involve interpretation of the Code. Instead, it is governed by the specific facts of the case, in which there was a lack of evidence that Paul had been retained to act as an expert at trial. See *People v. Blair*, 2011 IL App (2d) 070862, ¶ 50 (discussing the difference between a treating physician acting as an occurrence witness and as an expert). In regard to the hearsay objection, the State argues that a hearsay exception applies, but it did not present that argument to the trial court and did not provide a foundation to support application of an exception. In any event, this too is an issue dependent on the facts. Similarly, the State's argument concerning the trial court's decision to grant the petition for discharge is purely a matter of disagreement with the trial court's factual findings. As such, they do not fit within the capable-of-repetition-yet-evading-review exception either. In sum, we will not address them and we confine our analysis to the two issues identified above.


¶ 21          B. Denial of Evidence About the Reasons for Respondent's Admission
                  and Potential Consequences of His Failure to Take Medication

¶ 22    The State contends that the trial court erred when it determined that evidence about why respondent was admitted and whether respondent could pose a danger to himself or others

if he stopped taking medication was speculative and beyond the scope of the proceedings.

¶ 23       Section 1-119 of the Code provides:

" '[A person] subject to involuntary admission on an inpatient basis' means:

(1) A person with mental illness who because of his or her illness is reasonably expected, unless treated on an inpatient basis, to engage in conduct placing such person or another in physical harm or in reasonable expectation of being physically harmed;

(2) A person with mental illness who because of his or her illness is unable to provide for his or her basic physical needs so as to guard himself or herself from serious harm without the assistance of family or others, unless treated on an inpatient basis; or

(3) A person with mental illness who:

(i) refuses treatment or is not adhering adequately to prescribed treatment;

(ii) because of the nature of his or her illness, is unable to understand his or her need for treatment; and

(iii) if not treated on an inpatient basis, is reasonably expected, based on his or her behavioral history, to suffer mental or emotional deterioration and is reasonably expected, after such deterioration, to meet the criteria of either paragraph (1) or paragraph (2) of this Section.

In determining whether a person meets the criteria specified in paragraph (1), (2), or (3), the court may consider evidence of the person's repeated past pattern of specific behavior and actions related to the person's illness." 405 ILCS 5/1-119 (West 2010).

¶ 24       A person who is involuntarily admitted may petition for discharge. 405 ILCS 5/3-900 (West 2010). At a hearing, if the person makes a *prima facie* case for discharge, the State must prove by clear and convincing evidence that the person remains subject to involuntary admission. *In re Katz*, 267 Ill. App. 3d 692, 695 (1994). As on the State's initial petition, "a respondent is entitled to a current evaluation of his conduct and state of mind, including medical evidence that he presented a danger to himself or others as a direct result of the mental disorder." *People v. Nunn*, 108 Ill. App. 3d 169, 173 (1982). "In other words, the decision to commit must be based upon a fresh evaluation of respondent's conduct and mental state." *Id.* at 174. An examining physician may properly consider the respondent's complete medical history in forming an opinion about the respondent's current and future dangerousness. *In re Todd K.*, 371 Ill. App. 3d 539, 543 (2007). The court does not have to wait until the respondent hurts himself or another before involuntarily admitting him. *Id.*

¶ 25       In the absence of evidence that the respondent refused to take medication, an admission order cannot be based on the fact that the respondent might inflict harm if he or she fails to take medication. *Id.* For example, in *Nunn*, there was testimony that the respondent's illness could be controlled if he continued to take medication but that it would not be if he failed to take medication. There was no evidence that the respondent ever refused to take his medication. The respondent was found to be subject to involuntary admission. On appeal, the First District held that evidence that the respondent would fail to take his medication was

-6-

speculative. *Nunn*, 108 Ill. App. 3d at 174. The court expressed concern that an order of admission based on such a possibility could lead to the unacceptable result of permanent detention. *Id.* Thus, the court stated that "the State cannot successfully maintain that the potentially permanent institutionalization of respondent is justified by speculation that he may fail to take medication." *Id.* at 175; see also *People v. Robin*, 312 Ill. App. 3d 710, 717 (2000) (argument that stresses of noninstitutional life could lead to psychosis was speculative).

¶ 26    In comparison, in *People v. Washington*, 167 Ill. App. 3d 73 (1988), testimony established that the defendant, who was found not guilty by reason of insanity, had no insight into his medical condition, minimized his problems, did not perceive the need for outpatient treatment, and was unlikely to continue treatment if not involuntarily admitted. There was also evidence that he had refused medication in the past and, in the absence of medication, would probably engage in harmful conduct. The trial court ordered that the defendant remain admitted, and he appealed, arguing that the court erred under *Nunn*. The First District held that *Nunn* was distinguishable because, unlike in *Nunn*, where it was speculative that the respondent might refuse medication, in the case before it, the record established that the defendant previously refused to take medication and did not perceive the value of continued medical treatment. *Id.* at 79-80. Thus, the court held that his past refusal to take medication was properly considered as a factor in determining his potential dangerousness and it affirmed. *Id.* at 80.

¶ 27    Here, *Washington* is applicable. Unlike in *Nunn*, it was not speculative that respondent might quit taking his medication. Instead, it was uncontroverted that respondent would not take medication if released, and the trial court allowed testimony to that effect. However, the court did not allow testimony as to what would happen when respondent no longer took medication. By not allowing that testimony, the court excluded pertinent evidence about whether respondent was a person subject to involuntary admission under section 1-119. For example, since it was clear that respondent believed that he did not have a problem and would refuse medication if released, evidence about the potential effect of that refusal of treatment was relevant to the determination of whether, unless treated on an inpatient basis, respondent was reasonably expected to engage in conduct placing himself or another in physical harm. Likewise, it was relevant to a determination of whether, if not treated on an inpatient basis, respondent was reasonably expected, based on his behavioral history, to suffer mental or emotional deterioration and then become a danger to himself or others. Indeed, the court not only deprived the State of the ability to explore what would happen to respondent when he stopped taking medication, but it also did not allow the State to present information about his behavioral history, which is a relevant factor specifically noted in section 1-119(3). 405 ILCS 5/1-119(3) (West 2010). Why respondent was admitted and his behavior at that time were relevant to what would happen if he were discharged and refused to take medication.

¶ 28    We recognize that *Nunn* illustrates legitimate concerns with engaging in speculation that a respondent might refuse treatment and then might deteriorate. But this case did not present such a level of guesswork, because it was uncontroverted that respondent did not appreciate his condition and would indeed cease treatment. At that point, evidence of what would likely

happen was within the scope of the proceedings, which, under section 1-119, look at what is "reasonably expected" to happen, and the court should have allowed the State to present evidence on the matter.

¶ 29                    C. Ability of the State to Call Respondent as a Witness

¶ 30    The State next contends that it had the right to call respondent as a witness. Respondent, however, contends that doing so would be in contravention of a legislative intent to codify the privilege against self-incrimination in mental health proceedings.

¶ 31    A respondent may not invoke his or her constitutional right against self-incrimination in an admission proceeding unless the testimony might subject him or her to criminal liability. *In re Powell*, 85 Ill. App. 3d 877, 880 (1980); see *People ex rel. Keith v. Keith*, 38 Ill. 2d 405, 410 (1967). In this case, there is no indication that the State wished to inquire about anything that would subject respondent to criminal liability. Thus, the State was entitled to call respondent as a witness.

¶ 32    Respondent contends that comments made in 1976 by the Governor's Commission for the Revision of the Mental Health Code of Illinois show an intent to allow all respondents in discharge proceedings the ability to assert the privilege against self-incrimination. Governor's Comm'n for Revision of the Mental Health Code of Illinois 38 (Nov. 1976). However, respondent has not pointed to anything in the Code that actually codified that principle. Instead, the only Code provision that addresses the matter is section 3-208, which provides that an examiner must inform the respondent that he or she does not have to talk to the examiner and that any statements made may be disclosed at a court hearing on the issue of whether the respondent is subject to involuntary admission. 405 ILCS 5/3-208 (West 2010). That section does not address the ability to call a respondent as a witness in discharge proceedings, and the First District has rejected the argument that revisions to the Code changed the rule that the privilege does not apply unless the testimony will subject the respondent to criminal liability. *Powell*, 85 Ill. App. 3d at 880-81; see also *Allen v. Illinois*, 478 U.S. 364, 375 (1986) (proceedings under the Sexually Dangerous Persons Act (Ill. Rev. Stat. 1985, ch. 38, ¶ 105-1.01 *et seq.*) are not criminal within the meaning of the guarantee against self-incrimination). Thus, we determine that the State was entitled to call respondent as a witness, who could assert the privilege against self-incrimination only if his testimony would subject him to criminal liability.

¶ 33                                    III. CONCLUSION

¶ 34    The trial court erred when it excluded evidence about the reasons for respondent's admission and what would happen when he stopped taking medication. It also erred when it denied the State's request to call respondent as a witness. As the trial court failed to admit and consider highly relevant evidence, the trial court erred in granting the discharge petition, and accordingly its judgment is hereby reversed. We do not address the State's remaining arguments, because they are moot and an exception does not apply.

¶ 35        Reversed.