25CA2078 Peo in Interest of Dudley 02-19-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA2078
Arapahoe County District Court No. 25MH259
Honorable Bonnie H. McLean, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Michelle Dudley,

Respondent-Appellant.

---

ORDER AFFIRMED

Division VI
Opinion by JUDGE YUN
Grove and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 19, 2026

---

Ron Carl, County Attorney, Meghan Rubincam, Senior Assistant County
Attorney, Aurora, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1     Michelle Dudley appeals the district court's order certifying her for long-term treatment under section 27-65-110, C.R.S. 2025, and authorizing the involuntary administration of aripiprazole (Abilify).  We affirm.

## I.     Background

¶ 2     In April 2025, Dudley's neighbor reported concerns about her mental health, including that she had been yelling at people in her apartment complex and seeing and hearing people in the elevator shaft.  Dudley was involuntarily admitted to a hospital to stabilize her mental health, where she was diagnosed with schizoaffective disorder, bipolar type.  Subsequently, she was certified for short-term mental health treatment and treated with Abilify.

¶ 3     Over Dudley's objection, the district court extended her short-term certification in July 2025 and authorized the involuntary administration of Abilify, finding that the People had proved all four elements of the test set forth in *People v. Medina,* 705 P.2d 961, 973 (Colo. 1985).  Dudley continued to receive outpatient mental health care.

¶ 4     Before the order extending Dudley's short-term certification expired, her psychologist, Dr. Alexandra Zott, and her psychiatrist,

1

Dr. Paul Dobransky, petitioned the district court for a long-term certification order and an involuntary medication order. Dudley objected to both requests, leading the court to hold an evidentiary hearing where Dr. Dobransky and Dudley testified. After the hearing, the court entered an order certifying her for long-term treatment and authorizing involuntary administration of medication. The court found by clear and convincing evidence that Dudley has a mental health disorder and is gravely disabled because of it, and reasonable grounds exist to believe she will not remain in treatment voluntarily. The court also authorized the involuntary administration of Abilify to Dudley, finding that the People had proved all four *Medina* elements.

## II. Discussion

¶ 5 Dudley challenges the sufficiency of the evidence supporting the district court's order. Specifically, she contends that the evidence was insufficient to support the court's findings that (1) she is gravely disabled; (2) reasonable grounds exist to believe she will not remain in a voluntary treatment program; and (3) the People established the first, second, and third *Medina* elements. We address each issue in turn.

## A. Standard of Review

¶ 6 In reviewing the sufficiency of the evidence in a mental health proceeding, we determine whether the evidence, viewed as a whole and in the light most favorable to the petitioning party, is sufficient to support the district court's order. *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13. We defer to the court's factual findings if there is evidence supporting them, but we review the court's legal conclusions de novo. *People in Interest of Strodtman*, 293 P.3d 123, 131 (Colo. App. 2011). Both the resolution of testimonial conflicts and the determination of witness credibility are solely within the province of the fact finder. *People in Interest of Ramsey*, 2023 COA 95, ¶ 23. Where the evidence supports the district court's findings and conclusions, we may not substitute our judgment for that of the district court. *People in Interest of A.J.L.*, 243 P.3d 244, 255 (Colo. 2010).

## B. Grave Disability

¶ 7 Under specified circumstances, section 27-65-110 permits a professional in charge of a patient's short-term certification and treatment to petition for long-term care and treatment certification. *See* § 27-65-110(1). As pertinent here, to authorize long-term

certification for mental health treatment, a court must find by clear and convincing evidence that the patient has a mental health disorder and, as a result, is gravely disabled.  §§ 27-65-110(1)(a), 27-65-113(1), C.R.S. 2025.

¶ 8     A person is gravely disabled when her mental health disorder impairs her ability to take care of her essential needs, "such as food, shelter, clothing, and medical care," without significant supervision or assistance from other people.  *People v. Taylor*, 618 P.2d 1127, 1134 (Colo. 1980); *see* § 27-65-102(17), C.R.S. 2025.  Such disability must put the person "at risk of substantial bodily harm, dangerous worsening of any concomitant serious physical illness, significant psychiatric deterioration, or mismanagement of the person's essential needs that could result in substantial bodily harm."  § 27-65-102(17).

¶ 9     Dudley asserts that the evidence failed to establish that she is gravely disabled because the hearing testimony demonstrated that she is presently "fully capable of meeting her essential needs and making decisions regarding her own care."  She points to Dr. Dobransky's testimony that (1) while on her current medication regimen of injectable Abilify, Dudley is "not gravely disabled"

4

because "the med works"; and (2) she ranks in the "top percentages" for personal-care ability, motivation, and optimism among individuals with schizoaffective disorder and a traumatic brain injury.  And she points to her own testimony that she is presently able to provide and care for herself; has rented, maintained, and cleaned her apartment independently for the past five years; manages her own shopping, cooking, medical appointments, and budgeting; cares for her service animal; and runs her own business as a contractor in a physical therapy office.

¶ 10    The district court acknowledged that Dudley was, at the time of the hearing, doing exceptionally well on Abilify.  Nonetheless, the court found that it is "the Abilify [that] allows [Dudley] to care for herself on a daily basis."  Without it, she "quickly . . . deteriorates into [a] significant psychiatric . . . danger zone."  The court noted Dr. Dobransky's testimony that Dudley's "several year track record of mental health hospitalizations puts her in a very dangerous position."  And, consulting the entirety of Dudley's file, the court noted that Dudley experiences a nearly annual "decompensat[ion] in [her] mental health, struggling to the point of needing . . . psychiatric hospitalization, and court-ordered medications."  The

court further noted that this was an "ongoing cycle" spanning twenty years, which had significantly increased in the last three years. Thus, the court found that Dudley met the definition of gravely disabled because, "without significant supervision [of] and assistance" with her "medication regime," she is at risk of significant psychiatric deterioration.

¶ 11 The record supports this determination. Dr. Dobransky testified that he did not believe Dudley understands the risks and benefits of taking an oral versus injectable form of Abilify. While he said that Dudley has a "good mindset" insofar as she thinks about her ability to function, she does not "deeply understand" the risks associated with missing a dose of medication, forgetting to take it, or running out. He further opined that Dudley's prognosis without the medication was "very grim," noting her history of starting and stopping medications with corresponding decompensation and need for hospitalization. In short, he testified that Dudley was unable to demonstrate a nuanced understanding or appreciation of the risks associated with ceasing her medication, and he would like to see a longer track record of improvement before transitioning her to a voluntary medication regimen.

¶ 12     This evidence supports the district court's inference that Dudley is gravely disabled because, "without significant supervision [of] and assistance" with her "medication regime," she is at risk of significant psychiatric deterioration.

¶ 13     We note Dudley's reliance on *Conservatorship of Murphy*, 184 Cal. Rptr. 363 (Cal. Ct. App. 1982), and *People v. Nunn*, 438 N.E.2d 1342 (Ill. App. Ct. 1982), for the proposition that the determination of whether a person is gravely disabled must focus on the individual's existing condition, and not on the possibility of future relapse.  We are not bound by out-of-state authority. *Madalena v. Zurich Am. Ins. Co.*, 2023 COA 32, ¶ 33.

¶ 14     Nor are we persuaded by Dudley's reliance on *People v. Stevens*, 761 P.2d 768 (Colo. 1988).  In *Stevens*, our supreme court evaluated — among other things — whether sufficient evidence supported a determination that a patient's "mental illness resulted in a present danger to herself or others."  *Id.* at 775.  The court determined that sufficient evidence supported such a determination where experts testified that, although not imminently dangerous, the patient presented a "significant risk" of danger without treatment.  *Id.*  Given the probabilistic language of *Stevens*, we are

7

hard-pressed to conclude that it supports Dudley's position, and Dudley offers no analysis on why it should. In any event, *Stevens* did not apply its rationale to a grave disability determination.

### C. Reasonable Grounds

¶ 15 The long-term certification statute requires a showing that the patient has been advised of the availability of, but has not accepted, voluntary treatment. § 27-65-110(1)(b). However, the patient's acceptance of voluntary treatment does not preclude a long-term certification order "if reasonable grounds exist to believe that the [patient] will not remain in a voluntary treatment program." *Id.*

¶ 16 As we understand her, Dudley asserts that the People failed to prove that such reasonable grounds exist because the hearing testimony showed that "she desires to continue treatment voluntarily and recognizes her need for treatment and the plethora of benefits from treatment in her everyday life." However, despite Dudley's testimony and Dr. Dobransky's view that she is currently cooperative with her treatment, Dr. Dobransky testified that she has a history and "track record" of "stopp[ing]" her medications and that, as set forth above, she does not appreciate the risk of doing so. This testimony is sufficient to support a conclusion that

reasonable grounds exist to believe that Dudley will not remain in voluntary treatment.

### D. The *Medina* Elements

¶ 17 Notwithstanding Dudley's assertions to the contrary, we conclude that sufficient evidence supports the district court's conclusion that the People proved the first, second, and third *Medina* elements.

¶ 18 The first *Medina* element requires proof that the patient is incompetent to effectively participate in the relevant treatment decision. *Medina*, 705 P.2d at 973. The second element requires a showing that the requested medications are necessary to prevent a significant and likely long-term deterioration in the patient's mental condition. *Id.* And the third element requires that a less intrusive treatment alternative is not available. *Id.*

¶ 19 In concluding that these elements had been established, the district court found:

- Even though Dudley is able to care for herself, "she cannot fully weigh the risks and benefits of taking her medications on a consistent basis."

- Dudley experiences very serious psychotic symptoms without medication and has had many psychiatric hospitalizations; her long-term deterioration will be rapid without the requested medication.

- Although Dr. Dobransky is working toward getting Dudley to voluntarily take an oral form of Abilify in the future, "[r]ight now, the injectable [form] is the most appropriate and only available treatment."

¶ 20    The record supports the court's findings and conclusions. As to the first *Medina* element, Dr. Dobransky testified that, although Dudley wants to succeed, she lacks refined or nuanced insight into the nature of her mental health disorder and is unable to fully understand the risks and benefits of maintaining her medication regimen consistently. He further testified that she lacks a "detailed grasp and insight into a direct connection between coming off meds, and [requiring] hospitalizations."

¶ 21    As to the second element, Dr. Dobransky said that treating Dudley with "a member of the neuroleptic class of medicines is compulsory and [must] continue." Otherwise, Dudley's prognosis is

"very grim"; her psychotic symptoms would likely be "continual" and, among other things, impair her function significantly.

¶ 22    Last, Dr. Dobransky testified that there is not a less intrusive treatment alternative, and medication — such as Abilify — would be compulsory to treat Dudley "for life." He further testified that Abilify has minimal side effects compared to other medications. And although he initially testified that he thought Dudley would take Abilify without a court order, he later equivocated based on her history of stopping her medications and decompensating, testifying he was not sure that Dudley had "reache[d] a level of safety" where she could come off court-ordered medications.

¶ 23    Under these circumstances, and because the district court is the arbiter of both the weight and resolution of testimonial conflicts, we conclude that sufficient evidence supports the district court's *Medina* findings.

### III.    Disposition

¶ 24    The order is affirmed.

JUDGE GROVE and JUDGE SCHOCK concur.

11