NO. 4-06-0525          Filed 2/20/07

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| In re: TODD K., a Person Found Subject to Involuntary Admission, | ) ) | Appeal from Circuit Court of |
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Sangamon County |
|       Petitioner-Appellee, | ) | No. 06MH399 |
|       v. | ) | |
| TODD K., | ) | Honorable |
|       Respondent-Appellant. | ) | George H. Ray, |
| | ) | Judge Presiding. |

_____

JUSTICE COOK delivered the opinion of the court:

On June 16, 2006, respondent, Todd K., was found to be a person subject to involuntary admission and was ordered hospitalized for 90 days. Respondent appeals. We affirm.

I. BACKGROUND

On June 9, 2006, Robert Fitzgerald filed a petition for the emergency involuntary admission of respondent along with three certificates of qualified professionals stating respondent is subject to involuntary admission. At a hearing on June 16, 2004, Dr. Stacey Horstman, respondent's treating psychiatrist, testified that she was acquainted with respondent through a prior hospitalization, had treated him for the past week, and had attempted to examine him on June 9, 2004. At the examination, respondent refused to get out of bed and speak to Dr. Horstman, stating that he wished to speak with "the other doctor," who did not seem to exist. Dr. Horstman noted that respondent appeared

disorganized and seemed to be responding to internal stimuli.

Dr. Horstman stated respondent had schizophrenia, and due to his mental illness, respondent was at risk of inflicting harm upon others. In reaching this opinion, Dr. Horstman considered respondent's past medical records that revealed that respondent was brought to the hospital on this most recent occasion because he tried to choke a mental-health staff member. Further, the records showed that respondent had been hospitalized in the past for assaulting a police officer.

Dr. Horstman considered respondent in need of treatment and formulated a plan for that treatment. According to her treatment plan, Dr. Horstman opined that the least-restrictive treatment option was involuntary commitment for 90 days.

The State rested after presenting Dr. Horstman's testimony, and respondent moved for a directed finding. Respondent's motion was denied, and respondent testified. Respondent answered that he had "not really" been present for the hearing thus far and did not hear the testimony of Dr. Horstman. Respondent testified that he did not attack or choke anyone but admitted he was confrontational with a police officer who accused him of the attack. Respondent then renewed his motion for a directed finding, and the motion was denied.

The trial court found that based upon Dr. Horstman's testimony, respondent was subject to involuntary admission as he

- 2 -

suffered from a mental illness and was likely to inflict harm upon himself or others if he was not hospitalized and treated. The court reviewed the treatment plan and determined that involuntary commitment for 90 days was the least-restrictive alternative. This appeal followed.

## II. ANALYSIS

Respondent argues that his procedural due-process rights were violated when his guardian was not notified or consulted about respondent's hearing. Further, respondent claims that the State failed to prove by clear and convincing evidence that involuntary admission was warranted.

## A. Procedural Due-Process Violation

We review the issue of whether respondent's procedural due-process rights were violated de novo as the allegations involve only questions of law. In re George O., 314 Ill. App. 3d 1044, 1046, 734 N.E.2d 13, 15 (2000).

Respondent argues that although his guardian was provided with a copy of the petition for emergency involuntary admission of respondent, the failure to notify the guardian of the hearing violated his procedural due-process rights. Sections 3-609 and 3-611 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/3-609, 3-611 (West 2004)) direct that appropriate notice be served upon respondent, his attorney, and his guardian after a petition is filed and after the court

- 3 -

sets a hearing.  Respondent argues failure to comply with the Code requires vacating his involuntary admission.

The State responds that respondent has forfeited this issue by failing to raise this objection before the trial court or preserve it in his posttrial motion.  Further, respondent has not demonstrated any prejudice from this technical violation.

The record shows that respondent's guardian was served with a copy of the petition and was referenced in the treatment plan as having been contacted.

Even if we deemed this issue not forfeited, respondent has not demonstrated prejudice from the lack of formal notice of the hearing to his guardian.  See In re Nau, 153 Ill. 2d 406, 419, 607 N.E.2d 134, 140 (1992) (reversal of a commitment order is not warranted based upon a procedural defect if the defect was harmless as the purpose of the statute was met).  Notice to the guardian, like notice to the respondent, should be to give the guardian a chance to assist the respondent in preparing for the proceeding and a chance to be heard.  See Nau, 153 Ill. 2d at 419, 607 N.E.2d at 140, quoting In re Splett, 143 Ill. 2d 225, 232, 572 N.E.2d 883, 886 (1991).  The record suggests that despite the guardian's failure to attend the hearing, respondent's guardian was aware of the situation as he received a copy of the petition and was contacted for the treatment plan.  As the guardian was aware of the proceeding, he had the chance to assist

- 4 -

respondent, and the failure to formally notify him of the time and date of the hearing was harmless. Because respondent was afforded all of the procedural safeguards contemplated by the statute, respondent's due-process rights were not violated.

B. Clear and Convincing Evidence of Involuntary Admission

A person may be involuntarily admitted if it is established by clear and convincing evidence (405 ILCS 5/3-808 (West 2004)) that the person has a mental illness and "because of his or her illness is reasonably expected to inflict serious physical harm upon himself or herself or another in the near future" (405 ILCS 5/1-119(1) (West 2004)). The standard of review for an involuntary-commitment proceeding is whether the judgment is against the manifest weight of the evidence. In re Knapp, 231 Ill. App. 3d 917, 919, 596 N.E.2d 1171, 1172 (1992). The trial court's decision is given great deference and, absent a showing that it is against the manifest weight of the evidence, it "'will not be set aside at the appellate level, even if the reviewing court, after applying the clear and convincing standard, would have ruled differently.'" In re Bennett, 251 Ill. App. 3d 887, 888, 623 N.E.2d 942, 944 (1993), quoting In re Orr, 176 Ill. App. 3d 498, 505, 531 N.E.2d 64, 69 (1988).

The trial court's finding that respondent was mentally ill is not in dispute. Dr. Horstman testified respondent had been treated for schizophrenia in the past and opined that

- 5 -

respondent was still suffering from schizophrenia. According to respondent, however, Dr. Horstman's testimony never clearly and convincingly proved that due to respondent's mental illness, he was reasonably expected to threaten or imminently harm another. Dr. Horstman did not observe or have any knowledge of the alleged "choking" incident and did not observe any other incidents that would support her conclusion that respondent was a danger. Further, respondent denied that he ever choked anyone and only agreed that he was confrontational when he was accused.

We do not agree with respondent that Dr. Horstman's opinion was based purely on someone telling her that respondent had tried to choke someone. Dr. Horstman testified that she was acquainted with respondent through a prior commitment, and the records show that the prior commitment was due to respondent's aggravated battery to a police officer and resisting arrest. Further, the treatment plan discussed respondent's long-standing history of schizophrenia and his noncompliance with taking his medications for the past year. The plan discussed how respondent had reportedly been increasingly agitated and aggressive. When respondent was taken to the emergency room after the police found him wandering the streets after the alleged choking incident, respondent was disoriented, had poor personal hygiene, seemed to be responding to internal stimuli, and became so aggressive that restraints were necessary. This evidence, as well as Dr.

- 6 -

Horstman's observations of respondent, supported her opinion that respondent was a danger to others.

Respondent suggests that Dr. Horstman's opinion that he was likely to hurt someone in the near future is speculative unless she witnessed an incident or act of aggression herself. We disagree. A treating psychiatrist's opinion of potential dangerousness need not be derived from firsthand observations of violence and may be based on knowledge of incidents derived from medical history records. In re Houlihan, 231 Ill. App. 3d 677, 683, 596 N.E.2d 189, 194 (1992). An examining physician may properly consider a respondent's complete medical history in forming her opinion concerning that respondent's current and future dangerousness. In re Robert H., 302 Ill. App. 3d 980, 986, 707 N.E.2d 264, 269 (1999). "A commitment order should be affirmed where there is evidence of prior conduct along with evidence that the respondent remains in need of mental treatment." Robert H., 302 Ill. App. 3d at 986-87, 707 N.E.2d at 269. Further, the court does not have to wait until respondent hurts himself or someone else before involuntarily committing him. In re Manis, 213 Ill. App. 3d 1075, 1077, 572 N.E.2d 1213, 1214 (1991).

Because the trial court is in a superior position to determine witness credibility and to weigh evidence, we give great deference to the trial court's findings. Knapp, 231 Ill.

App. 3d at 919, 596 N.E.2d at 1172.  The court was in the best position to determine that respondent's denial of the attack was not credible and Dr. Horstman's opinion that respondent was a danger to others was.  Based on Dr. Horstman's testimony, the trial court's finding that respondent was subject to involuntary admission was not against the manifest weight of the evidence.

Respondent argues, though, that the State presented insufficient evidence to show that involuntary admission was the least-restrictive alternative.  Respondent's medical records show that he has a history of involuntary admissions and noncompliance with taking his prescribed medications.  The treatment plan suggested he had not taken his medications for a year.  While respondent has a legal guardian who supports him and he receives social security disability, respondent had recently been evicted according to the treatment plan.  As the evidence suggested respondent was not taking his medication, had a history of violence toward others, and had recently been acting aggressively, the trial court could easily conclude that involuntary commitment was the least-restrictive alternative.

Based on the information in the treatment plan and Dr. Horstman's opinion that involuntary admission was the least-restrictive alternative, the trial court's findings that respondent is a person who is mentally ill, that respondent poses a danger to others, and that involuntary commitment is the least-

restrictive alternative are not against the manifest weight of the evidence.

## III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

Affirmed.

STEIGMANN, P.J., and MYERSCOUGH, J., concur.