No. 3--09--0863

Filed June 29, 2010

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2010

| | | |
|---|---|---|
| In re A.M., | ) | Appeal from the Circuit Court |
| | ) | of the 9th Judicial Circuit, |
| a Minor | ) | Fulton County, Illinois, |
| | ) | |
| (The People of the State of | ) | |
| Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | No. 06--JA--21 |
| | ) | |
| v. | ) | |
| | ) | |
| Richard W., | ) | Honorable |
| | | Patricia A. Walton, |
| Respondent-Appellant). | ) | Judge, Presiding. |

PRESIDING JUSTICE O'BRIEN delivered the opinion of the court:

The trial court granted the State's petition to terminate the parental rights of the

respondent, Richard W., as to his daughter, A.M. The respondent appeals, arguing that the trial

court violated his due process rights by finding him in default despite the State and the court's

awareness that he was incarcerated in Colorado at the time. We affirm.

FACTS

A.M. was born on May 26, 2005. On November 1, 2006, the State filed a juvenile

petition alleging neglect due to an injurious environment against A.M.'s mother (count I) and

A.M.'s putative father, Eric M. (count II). On July 3, 2007, the State amended the petition to add count III, which alleged that the respondent was A.M.'s father and she was a dependent minor without proper care due to his incarceration. The court appointed an attorney to represent the respondent.

On August 9, 2007, the respondent was no longer incarcerated and appeared in court with his attorney. The court ordered a deoxyribonucleic acid (DNA) test. The DNA results indicated a 99.99% probability that the respondent was A.M.'s biological father. On October 2, 2007, the respondent appeared in court with his attorney. Based on the DNA results, the trial court found that the respondent was A.M.'s biological father.

On October 30 and November 13, 2007, the respondent appeared in court with his attorney for an adjudication hearing, which was continued by the court. On December 18, 2007, the respondent failed to appear, and his attorney requested a continuance, which was granted. On January 3, 2008, the trial court ordered that the adjudication hearing be scheduled for January 22, 2008, and that the State send notice to all parties, "with notice to respondent parents to include language regarding findings of default if the respondent parents fail to appear." The respondent was not present but was represented by counsel.

On January 22, 2008, the respondent was not present for the adjudication hearing, and his attorney requested a continuance. The State indicated that the respondent "ha[d] a felony warrant outstanding in Fulton County, which may well explain his absence." The State also noted the notice of the hearing that had been sent to the respondent's last known address was not returned as invalid. The court denied the respondent's attorney's request for continuance.

In proceeding with the adjudication hearing, A.M.'s mother and Eric M. stipulated to

2

counts I and II of the petition. The court found that A.M. was neglected based upon her mother's and Morse's stipulations to counts I and II and the respondent's default as to count III. In the written adjudication order, the court found that the parties had received notice of the adjudication hearing and the respondent was defaulted as to count III in that A.M. was a dependent minor due to the respondent's incarceration from March 24, 2005, until September 14, 2007.

On February 19, 2008, the respondent was not present at the dispositional hearing, although notice of the hearing was sent to his last known address. In its dispositional order, the court made A.M. a ward of the court and awarded custody and guardianship of A.M. to the Department of Children and Family Services. The court did not make any findings as to the respondent's dispositional fitness.

On June 24, 2008, the respondent did not appear at the permanency review hearing, despite notice having been sent to his last known address. The court set the permanency goal as return home within 12 months. The respondent's attorney requested "not that [he] necessarily cease to be counsel of record but [that he] be excused from appearing until such time as [the respondent] contact[ed] him." The trial court "excused" the respondent's attorney from any further appearances until the respondent contacted him and showed some interest in the case. Thereafter, despite being provided notice, neither the respondent nor his attorney attended subsequent court hearings until after the respondent's parental rights were terminated.

Specifically, on December 23, 2008, neither the respondent nor his attorney attended a permanency review hearing, at which the court changed the permanency goal to substitute care pending termination of parental rights and orally found that the respondent made unsatisfactory progress and noted that he had previously been defaulted. On March 10, 2009, neither the

3

respondent nor his attorney attended a status hearing, which the court continued for the State to file a termination of parental rights petition and for the parties' first appearance. Notice of the April 28, 2009, first appearance hearing was sent to all parties.

On April 28, 2009, the State filed a petition for termination of parental rights, alleging that the respondent was unfit for failing to maintain a reasonable degree of interest, concern, or responsibility toward A.M.'s welfare (750 ILCS 50/1(D)(b) (West 2008)), make reasonable efforts to correct the conditions that were the basis for A.M.'s removal (750 ILCS 50/1(D)(m)(i) (West 2008)), make reasonable progress toward A.M.'s return home within nine months after she was adjudicated neglected (750 ILCS 50/1(D)(m)(ii) (West 2008)), or make reasonable progress toward the return of A.M. during any nine-month period following the end of the initial nine-month period following the adjudication of neglect, abuse, or dependency (750 ILCS 50/1(D)(m)(iii) (West 2008)).

On April 28, 2009, neither the respondent nor his attorney attended the first appearance hearing. At the hearing, A.M.'s mother surrendered her parental rights, and Eric M. was dismissed as a party. The court found "[b]ased upon information and belief, the respondent biological father *** [was] incarcerated in Lamar, CO." The court continued the matter to June 2, 2009, for a hearing on the termination petition, with notice sent to the respondent's attorney. On May 5, 2009, the respondent was served with summons and the termination petition at the Colorado prison. On June 2, 2009, neither the respondent nor his attorney appeared at the termination of parental rights hearing. The court found that based upon the respondent's failure to appear, file any responsive pleading, contact the State, or contact his attorney, he was defaulted. On June 9, 2009, the court entered a written termination order that the respondent was

4

defaulted, and it found, by clear and convincing evidence, that the respondent was unfit as alleged in the termination petition. The respondent and his attorney were sent notice of the best interest hearing.

On June 30, 2009, neither the respondent nor his attorney appeared at the best interest hearing. A best interest report indicated that A.M. had been in her current foster home for 18 months and considered her foster parents to be her parents, with whom she had a close bond. A.M.'s foster parents were willing to adopt A.M. The respondent's last contact with A.M. was in September 2007. The court found that it was in the best interest of A.M. to terminate the respondent's parental rights, noting that he was defaulted. The court entered its best interest order on July 21, 2009.

On August 14, 2009, the respondent's attorney filed a motion to vacate the order of June 9, 2009, in which the court found the respondent unfit, and the order of July 21, 2009, terminating the respondent's parental rights. In the motion, the respondent indicated that he had been incarcerated in Colorado since January 2009, and he received the summons for the first appearance on the petition to terminate his rights in May 2009. The respondent claimed that he was unable to advise his counsel of his desire to defend against the petition. The respondent did not explain his lack of participation in the proceedings from the last time he appeared in court on November 13, 2007, until his January 2009 incarceration.

On September 29, 2009, the court denied the motion, finding that the respondent and his attorney had notice of the petition to terminate, termination hearing, and the best interest hearing but failed to respond or object. The respondent appealed.

ANALYSIS

5

On appeal, the respondent contends that his due process rights were violated when the trial court found him in default and terminated his parental rights despite the court and the State knowing that he was incarcerated in Colorado at the time. Because contentions of due process violations are a question of law, we review this matter de novo. In re Todd K., 371 Ill. App. 3d 539, 867 N.E.2d 1104 (2007).

Parents have a fundamental liberty interest in the care, custody, and control of their children, which is protected by the due process clause of the fourteenth amendment. U.S. Const., amend. XIV, §1; In re M.H., 196 Ill. 2d 356, 751 N.E.2d 1134 (2001). Procedures involving the termination of parental rights must comply with the requirements of due process. Santosky v. Kramer, 455 U.S. 745, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982); M.H., 196 Ill. 2d 356, 751 N.E.2d 1134. A parent has a due process right to adequate notice in juvenile proceedings. In re C.L.T., 302 Ill. App. 3d 770, 706 N.E.2d 123 (1999). Also, section 1--5 of the Juvenile Court Act of 1987 (Act) entitles the respondent the right to be present at the proceedings. 705 ILCS 405/1--5 (West 2008).

Section 2--15(7) of the Act provides:

"The appearance of the minor's legal guardian or custodian, or a person named as a respondent in a petition, in any proceeding under this Act shall constitute a waiver of service of summons and submission to the jurisdiction of the court, except that the filing of a motion authorized under Section 2--301 of the Code of Civil Procedure [(735 ILCS 5/2--301 (West 2008) (prescribing objection to the court's personal jurisdiction)] does not constitute an appearance under this subsection." 705 ILCS 405/2--15(7) (West 2008).

Here, the respondent appeared in court on four occasions prior to the adjudication,

dispositional, termination, and best interest hearings, and at no point did he object to the court's jurisdiction. Therefore, the respondent waived the requirement that he be provided notice of the proceedings in this case. See In re Antwan L., 368 Ill. App. 3d 1119, 859 N.E.2d 1085 (2006). Nonetheless, the respondent was served with the termination petition and the summons on the termination hearing. Therefore, the respondent had actual notice of the proceedings and had a duty to follow the progress of his case. See C.L.T., 302 Ill. App. 3d 770, 706 N.E.2d 123.

Whether a party appears interested or disinterested in the proceeding does not alleviate the court of its responsibility to comply with procedural due process. In determining whether procedural due process has been violated in parental rights termination proceedings, the following three factors are balanced: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens the additional or substituted procedural requirements would entail. M.H., 196 Ill. 2d 356, 751 N.E.2d 1134, citing Mathews v. Eldridge, 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976).

In applying the Mathews factors, we find that the respondent was not denied due process. It is undeniable that the respondent had a liberty interest to the care, custody, and control of A.M. The court invited some risk of the erroneous deprivation of the respondent's parental interests when it allowed his attorney to be "excused" from attending the proceedings until the respondent contacted him or the court.

Not only did the court excuse respondent's attorney's appearance, it also made no inquiry concerning, and took no steps toward securing, respondent's release from the prison in Colorado

7

or other means to allow him to participate in any of the termination proceedings. Finally, the risk of deprivation of the respondent's interest was increased by the poor record-keeping on the part of the court, attorneys, and agencies involved, and by their lack of diligence in attempting to locate or maintain contact with the respondent. Thus, we agree with the respondent that the procedures invoked in this case increased the risk of an erroneous deprivation of his parental rights. Such procedural failures implicate perceptions of judicial fairness and the integrity of judicial proceedings, and also encourage the prosecution of appeals where the substantive decision is otherwise unassailable.

However, the risk that the respondent was erroneously deprived of those rights was minimal when balanced against the State's interest in preventing a delay in adjudicating the respondent's parental rights and preserving A.M.'s best interest. See In re E.L., 152 Ill. App. 3d 25, 504 N.E.2d 157 (1987) (providing that the primary concern of proceedings under the Act is the best interest and welfare of the child). Delays in termination proceedings impose a serious cost on the function of the government, as well as intangible costs to the lives of the children involved. In re M.R., 316 Ill. App. 3d 399, 736 N.E.2d 167 (2000). Here, despite being incarcerated, the respondent could have contacted his attorney, caseworkers, or the court, but he voluntarily chose not to so. The respondent had actual notice of the proceedings, and counsel was readily available to the respondent at any time. The record is abundantly clear that the respondent had no defense that could be presented to the court, as he failed to cooperate with the service plan, failed to answer the termination petition, and failed to maintain contact with caseworkers, the court, and his own attorney.

Our review of the record indicates that the respondent voluntarily chose not to participate

8

in the proceedings, despite having actual notice of the proceedings. As such, the court was not obligated to delay the proceedings waiting for the him to become involved. See C.L.T., 302 Ill. App. 3d 770, 706 N.E.2d 123 (providing that although parents have a right to be present at a termination hearing, their presence is not mandatory and the trial court is not obligated to delay the proceedings until the parent chooses to appear). Therefore, based upon the facts and circumstances of this case, we conclude that the court finding the respondent in default in his absence, despite knowing he was incarcerated in Colorado, was not a violation of his procedural due process rights.

## CONCLUSION

Accordingly, the judgment of the circuit court of Fulton County is affirmed.

Affirmed.

McDADE and LYTTON, JJ., concur.