2024 IL App (4th) 241048

NOS. 4-24-1048, 4-24-1049 cons.

FILED
December 11, 2024
Carla Bender
4ᵗʰ District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| *In re* R.H., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Peoria County |
|     Petitioner-Appellee, | ) | No. 21JA266 |
|     v.       (No. 4-24-1048) | ) | |
| Erica H., | ) | |
|     Respondent-Appellant). | ) | |
| ------------------------------------------------------------------- | ) | |
| *In re* E.T., a Minor | ) | No. 21JA267 |
| | ) | |
| (The People of the State of Illinois, | ) | |
|     Petitioner-Appellee, | ) | |
|     v.       (No. 4-24-1049) | ) | Honorable |
| Erica H., | ) | David A. Brown, |
|     Respondent-Appellant). | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court, with opinion.
Justices Steigmann and Lannerd concurred in the judgment and opinion.

## OPINION

¶ 1      Respondent mother, Erica H., appeals the circuit court's judgments terminating her parental rights to her daughters, R.H. (born January 2020) and E.T. (born December 2017). In this consolidated appeal, respondent raises several purported errors related to (1) the summons issued following the filing of the petitions to terminate her parental rights, (2) the discharge of her appointed counsel, (3) the absence of notice of a default order, (4) the judicial notice of a court docket, and (5) the denial of her motion to vacate. For the reasons that follow, we reverse and remand for further proceedings.

¶ 2                                    I. BACKGROUND

¶ 3        Respondent and Thomas T. are the minors' parents. Thomas T.'s parental rights to

the minors were also terminated during the proceedings below. He is not, however, a party to this

appeal.

¶ 4        In July 2021, the State filed petitions to adjudicate the minors wards of the court,

alleging they were neglected in that their environment was injurious to their welfare. Following a

hearing that same month, the circuit court placed the minors in the temporary care of the Illinois

Department of Children and Family Services (DCFS). The court's orders indicate respondent

appeared before the court and was admonished to cooperate with DCFS, comply with the terms of

the service plans, and correct the conditions that required the minors to be taken into DCFS care,

or she would risk the termination of her parental rights to them.

¶ 5        In October 2021, the circuit court found the minors to be neglected and made them

wards of the court. The court's orders indicate respondent appeared before the court and the neglect

findings were based, in part, on a stipulation by respondent. The orders also indicate respondent

was admonished to cooperate with DCFS, comply with the terms of the service plans, and correct

the conditions that required the minors to be taken into DCFS care, or she would risk the

termination of her parental rights to them.

¶ 6        Between February 2022 and January 2024, the circuit court conducted six

permanency hearings to review the minors' cases. The court's orders from those hearings indicate

respondent was represented by counsel at all of the hearings and personally appeared at three of

them. Additionally, the court entered an order in January 2023 continuing the permanency hearing

because respondent had expressed a desire to obtain additional records. The court also entered an

order in August 2023 allowing respondent's counsel to withdraw from the case and appointing

respondent new counsel. The only permanency hearing that occurred following the appointment of new counsel was in January 2024, and the court's order following that hearing indicates respondent was represented by her new counsel at the hearing but did not personally appear and the next permanency hearing was scheduled for July 2024.

¶ 7 On February 8, 2024, the State filed petitions to terminate respondent's parental rights to the minors, which were scheduled for a first appearance at 11 a.m. on March 20, 2024. In the petitions, the State alleged respondent was an unfit parent in that she failed to make reasonable progress toward the return of the minors to her care within a nine-month period following their adjudications of neglected (750 ILCS 50/1(D)(m)(ii) (West 2022)), namely April 26, 2023, to January 26, 2024. The State further alleged it was in the minors' best interest to terminate respondent's parental rights and appoint DCFS as guardian, with the power to consent to adoption. Following the filing of the petitions, summons were issued for respondent informing her of the need to appear before the court at 11 a.m. on March 20, 2024, to answer the petitions. She was served with the summons on February 22, 2024.

¶ 8 On March 20, 2024, the circuit court held the scheduled first appearance on the petitions to terminate respondent's parental rights. The record on appeal contains no transcript, bystander's report, or agreed statement of facts from the first appearance. According to the court's order from the first appearance, (1) respondent was represented by her new counsel but did not personally appear, (2) respondent was "defaulted," (3) a hearing on the petitions to terminate respondent's parental rights was scheduled for May 3, 2024, and (4) "Mother's attorney motioned to be discharged, granted without objection."

¶ 9 On May 3, 2024, the circuit court held the scheduled hearing on the State's petitions to terminate respondent's parental rights. Neither respondent nor any attorney appearing on her

behalf were present at the hearing.

¶ 10    During the fitness portion of the hearing, the State made a proffer, and the circuit court took judicial notice of the pleadings and orders contained within the court files. Also, the minors' caseworker, on inquiry of the court, confirmed she would testify consistently with both the State's proffer and the information about respondent's actions as set forth in a best-interest report, which she authored. Following argument from the State, the court found, "based upon the State's proffer, the Court's judicial notice of the files of the report that was submitted by the agency, and the argument of counsel today," respondent was an unfit parent as alleged in the petitions to terminate her parental rights.

¶ 11    The circuit court proceeded with the best-interest portion of the hearing immediately following the conclusion of the fitness portion of the hearing. The State presented two best-interest reports and testimony from the minors' caseworker and the court appointed special advocate (CASA). In part, the caseworker indicated respondent had a pending case in Tennessee involving another child and had recently submitted a receipt for a deposit on an apartment in Tennessee. The caseworker confirmed she had spoken with respondent in the weeks prior to the hearing. When asked if respondent was aware of the hearing, the caseworker responded, "To my knowledge, and also her Tennessee caseworker is aware of it." Following recommendations from the State and the guardian *ad litem* (GAL), the court found it would be in the minors' best interest to terminate respondent's parental rights.

¶ 12    On May 6, 2024, the circuit court entered orders terminating respondent's parental rights to each of the minors.

¶ 13    On May 30, 2024, respondent, through newly retained counsel, filed a motion to vacate the orders entered in each of the minor's cases. In the motion, respondent acknowledged

being personally served with the summons and being aware of the need to appear at 11 a.m. on March 20, 2024. Respondent alleged she (1) appeared at the designated time and was informed the cases were not on the docket, (2) later "attempted to obtain information regarding any rescheduling of the [first appearance] from her caseworker but without success," (3) did not receive notice that the cases would proceed to a hearing on the petitions to terminate her parental rights on May 3, 2024, and (4) sought legal assistance and retained counsel on or about May 28, 2024. Based upon these allegations, respondent argued it would be in the minors' best interest for the orders to be vacated and for a new hearing to be held, where she would have the opportunity to address the petitions.

¶ 14 On June 25, 2024, the circuit court held a hearing on respondent's motion to vacate. Both the State and the GAL objected to respondent's motion. Respondent testified in support of her motion, and the State presented testimony from the minors' caseworker.

¶ 15 When testifying, respondent acknowledged being personally served with the summons and being aware of the need to appear at 11 a.m. on March 20, 2024. Respondent explained she arrived at court at 10 a.m. that day and then sat outside the courtroom for about 45 minutes, during which time she did not see a bailiff or any other person waiting. Because she did not see any activity, she went to the circuit clerk's office. Respondent provided a representative from the clerk's office with "the case number," and according to respondent, the representative reported they had nothing on file of a court hearing other than one scheduled in July 2024. Respondent left the courthouse and went to the office of an attorney who had previously represented her and asked if the office "could pull anything up," but "they couldn't find anything." Respondent asserted her only knowledge of any later hearing was the one scheduled for July. When asked by her counsel if she was represented by an attorney at the time of the March 20, 2024,

hearing, respondent testified she believed she was represented by a specific attorney from the public defender's office. She explained she did not follow up with that attorney because the last time she contacted her she did not receive a response. On cross-examination, the State asked, "And after March 20th, you didn't contact your attorney," to which respondent responded, "No." Respondent acknowledged being in contact with the minors' caseworker following the March 20, 2024, hearing but asserted nothing was conveyed to her about a missed hearing or a hearing on the petitions. Respondent expressed a desire to defend against the petitions to terminate her parental rights.

¶ 16 The minors' caseworker, who was also assigned to a pending case of another child of respondent's, testified she was present at the 11 a.m., March 20, 2024, first appearance. She asserted she "usually" arrived for court hearings 20 to 30 minutes early and "always" arrived at least 15 minutes early. She did not have a specific recollection of when she arrived for the first appearance. She recalled the minors' foster parents arriving "about" 15 minutes early and there were others in the hallway as well as a bailiff entering and exiting the courtroom. The caseworker did not see respondent. The caseworker recalled respondent reporting sometime around March 15, 2024, that she had an upcoming visit with her child in Tennessee on March 19, 2024. The caseworker testified there was a family team meeting with respondent on April 26, 2024, during which they discussed "services, home visits, the service plan and court dates and any concerns," and following the meeting, the case supervisor sent an e-mail to a Tennessee caseworker indicating the minors' hearing was set for May 3, 2024. The caseworker indicated respondent had asked for communication to occur through e-mail to keep "a paper trail." The caseworker reviewed e-mails from respondent and discovered she had confirmed court dates involving another child but had not done so for court dates involving the minors. The caseworker did not send respondent an e-mail

about the May 3, 2024, hearing.

¶ 17 Following the testimony of respondent and the minors' caseworker, the circuit court took judicial notice of its docket on the morning of March 20, 2024. The court noted there were 13 cases set for an answer or first appearance at 11 a.m. that day. The court also took judicial notice of its docket indicating who was present at the first appearance involving the minors. The court noted the caseworker, the CASA representative, and the minors' foster parents were present.

¶ 18 Respondent asked the circuit court to vacate the orders based upon "the sworn evidence," "the best interest of the children," and "the general policy of not having defaults in *** termination cases." Respondent maintained she tried to be at the March 20, 2024, hearing, and it would not be a burden as a matter of judicial economy to retry the cases. Conversely, the State and the GAL asked the court to deny respondent's motion to vacate, as it would not be in the minors' best interest. They both asserted respondent's testimony was not credible. The State also asserted respondent had notice of the March 20, 2024, hearing and failed to inquire about the proceedings with the minors' caseworker, and it was a reasonable "inference" that respondent was informed of the date of the hearing on the petitions to terminate her parental rights. The GAL also asserted respondent had notice that the first appearance was to commence at 11 a.m., did not wait until the 11 a.m. court call before leaving the courthouse, and failed to inquire about the proceedings with either the minors' caseworker or her "assigned attorney."

¶ 19 Following arguments, the circuit court denied respondent's motion to vacate. Initially, the court found respondent had credibility issues, specifically noting respondent's testimony that a representative from the circuit clerk's office told her the minors' cases were not scheduled for a hearing was not credible. The court further found, regardless of any credibility issues, respondent admitted she left the courthouse before the 11 a.m. court call and then contacted

- 7 -

a former attorney rather than "her present attorney" or the minors' caseworker about the proceedings. The court concluded respondent failed to exercise due diligence and did not present any defense against the allegations in the petitions to terminate her parental rights.

¶ 20        This consolidated appeal followed.

¶ 21                              II. ANALYSIS

¶ 22        On appeal, respondent raises several purported errors related to (1) the summons issued following the filing of the petitions to terminate her parental rights, (2) the discharge of her appointed counsel, (3) the absence of notice of a default order, (4) the judicial notice of a court docket, and (5) the denial of her motion to vacate. The State, in response, maintains there was no error.

¶ 23        While, for the reasons that follow, we find respondent's challenge to the discharge of her appointed counsel dispositive to our resolution of this appeal, we must initially address her challenge to the summons issued following the filing of the petitions to terminate her parental rights, at least in part. We must do so because respondent contends the absence of purportedly required language in the summons informing her of a potential default if she failed to appear resulted in the circuit court lacking subject matter jurisdiction. That is, respondent's contention presents an issue of voidness, an issue which must be addressed before proceeding any further. See *People v. Flowers*, 208 Ill. 2d 291, 306-08, 802 N.E.2d 1174, 1183-84 (2003) ("A ruling made by a circuit court in the absence of subject matter jurisdiction is void" and "may be attacked at any time or in any court, either directly or collaterally," provided "the issue of voidness must be raised in the context of a proceeding that is properly pending in the courts.").

¶ 24        Subject matter jurisdiction "refers to the power of a court to hear and determine cases of the general class to which the proceeding in question belongs." *Belleville Toyota, Inc. v.*

*Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334, 770 N.E.2d 177, 184 (2002). "With the exception of the circuit court's power to review administrative action, which is conferred by statute, a circuit court's subject matter jurisdiction is conferred entirely by our state constitution." *Id.* Our state constitution provides jurisdiction extends to all "justiciable matters." Ill. Const. 1970, art. VI, § 9. Therefore, "[t]o invoke the circuit court's subject matter jurisdiction, a party need only present a justiciable matter, *i.e.*, a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests." (Internal quotation marks omitted.) *LVNV Funding, LLC v. Trice*, 2015 IL 116129, ¶ 35, 32 N.E.3d 553.

¶ 25        In this case, there is no dispute the petitions seeking to terminate respondent's parental rights alleged the existence of justiciable matters to which the circuit court's constitutionally granted original jurisdiction extended. Instead, the dispute concerns whether the summons issued following the filing of the petitions to terminate respondent's parental rights contained language purportedly required by Illinois Supreme Court Rule 101 (eff. Apr. 20, 2023) informing respondent of a potential default if she failed to appear. Assuming, *arguendo*, the summons did not contain the required language, our supreme court has made clear, "the failure to comply with a statutory requirement or prerequisite does not negate the circuit court's subject matter jurisdiction or constitute a nonwaivable condition precedent to the circuit court's jurisdiction." *LVNV Funding, LLC*, 2015 IL 116129, ¶ 37; see, *e.g.*, *In re Luis R.*, 239 Ill. 2d 295, 302-03, 941 N.E.2d 136, 141 (2010). Accordingly, we reject respondent's challenge to the summons to the extent she contends its failure to include purportedly required language resulted in the court lacking subject matter jurisdiction.

¶ 26        We now turn to respondent's challenge to the discharge of her appointed counsel.

Respondent contends the circuit court erred when it discharged her counsel without requiring compliance with Illinois Supreme Court Rule 13 (eff. Jan. 1, 2023) and then proceeded to a hearing on the petitions to terminate her parental rights without her or counsel to represent her being present.

¶ 27        Like many of her other challenges, respondent raises her challenge to the discharge of her appointed counsel for the first time on appeal. While this would ordinarily result in a forfeiture of the issue and the end of our inquiry, we elect to excuse respondent's forfeiture and address her challenge on the merits. See *In re M.W.*, 232 Ill. 2d 408, 430, 905 N.E.2d 757, 772 (2009) (forfeiture principle applies to juvenile proceedings); *In re D.F.*, 208 Ill. 2d 223, 238, 802 N.E.2d 800, 809 (2003) (forfeiture is a limitation on the parties and not the reviewing court). We do so, in part, because the record suggests all interested parties were under the mistaken belief during the hearing on respondent's motion to vacate that respondent continued to be represented by counsel following the March 20, 2024, first appearance. We also do so to address an apparent tension amongst the districts of this court related to respondent's challenge, thereby maintaining a uniform body of precedent. See *In re Br. M.*, 2021 IL 125969, ¶ 40, 182 N.E.3d 693 ("And a reviewing court should not easily declare forfeiture of an argument directed at a decision to terminate [parental] rights—particularly where, as here, there is some tension about that argument in the appellate court.").

¶ 28        While we elect to excuse respondent's forfeiture and address her challenge to the discharge of her appointed counsel on the merits, we must, before proceeding any further, remind respondent's counsel of the importance of presenting this court with a developed argument. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (requiring an appellant's brief to contain "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the

authorities and the pages of the record relied on"). As we will discuss, counsel has identified a serious error. Yet, counsel's argument leaves much to be desired. For instance, counsel fails to adequately explain the *effect* of the error—the implications it has on respondent's due process rights. Additionally, while counsel provides general citations to cases supporting respondent's position, counsel fails to explain the significance of those cases. We caution counsel for future appeals the failure to present this court with a developed argument risks the forfeiture of an issue on appeal. See, *e.g.*, *In re Marriage of Hundley*, 2019 IL App (4th) 180380, ¶ 82, 125 N.E.3d 509.

¶ 29    Under the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2022)), parents subject to a proceeding to terminate parental rights are statutorily entitled to be represented by counsel, which shall be appointed if the parent is financially unable to obtain counsel. *Id.* § 1-5(1). The statute explicitly provides appointed counsel

> "shall appear at all stages of the trial court proceeding, and such appointment shall continue through the permanency hearings and termination of parental rights proceedings subject to withdrawal, vacating of appointment, or substitution pursuant to Supreme Court Rules or the Code of Civil Procedure [(735 ILCS 5/1-101 *et seq.* (West 2022))]." *Id.*

The statute further provides, "[f]ollowing the dispositional hearing, the court may require appointed counsel, other than counsel for the minor or counsel for the [GAL], to withdraw the counsel's appearance upon failure of the party for whom counsel was appointed under this Section to attend any subsequent proceedings." *Id.*

¶ 30    Illinois Supreme Court Rule 13(c)(2)-(4) (eff. Jan 1, 2023), which addresses the withdrawal of an appearance for a party, provides, in pertinent part, as follows:

"(2) Notice of Withdrawal. Except as provided under paragraph (c)(7), an attorney may not withdraw his or her appearance for a party without leave of court and notice to all parties of record. Unless another attorney is substituted, the attorney must give reasonable notice of the time and place of the presentation of the motion for leave to withdraw, by personal service, certified mail, or a third-party carrier, directed to the party represented at the party's last known business or residence address. Alternatively, the attorney may give such notice electronically, if receipt is acknowledged by the party. Such notice shall advise said party that to insure notice of any action in said cause, the party should retain other counsel therein or file with the clerk of the court, within 21 days after entry of the order of withdrawal, a supplementary appearance stating therein an address to which service of notices or other documents may be made.

(3) Motion to Withdraw. The motion for leave to withdraw shall be in writing and, unless another attorney is substituted, shall state the last known address(es) of the party represented. The motion may be denied by the court if granting the motion would delay the trial of the case, or would otherwise be inequitable.

(4) Copy to be Served on Party. If the party does not appear at the time the motion for withdrawal is granted, either in person or by substitute counsel, then, within three days of the entry of the

order of withdrawal, the withdrawing attorney shall serve the order

upon the party in the manner provided in paragraph (c)(2) of this

rule and file proof of service of the order."

¶ 31 In this case, the circuit court held the scheduled first appearance on the petitions to terminate respondent's parental rights on March 20, 2024. Respondent was represented by counsel at the first appearance but did not personally appear. The court's order entered following the first appearance states, "Mother's attorney motioned to be discharged, granted without objection." Absent from the record is a written motion to withdraw as required by Rule 13(c)(3). Additionally, absent from the record is any indication of notice to respondent of the motion to withdraw as set forth by Rule 13(c)(2). And finally, absent from the record is proof of service of the order discharging respondent's counsel, as required by Rule 13(c)(4).

¶ 32 The State suggests the circuit court "could have required [respondent's] counsel to withdraw" because respondent did not appear at a prior proceeding and, therefore, we must construe the record against respondent, as she has not provided any transcript, bystander's report, or agreed statement of facts from the first appearance. The State's position is unconvincing. First, we find the court's order to be clear—respondent's counsel motioned to be discharged, which the court granted without objection; the court did not require respondent's counsel to withdraw. Second, the State does not explain the import of its suggestion. And third, even if the court had required respondent's counsel to withdraw, the State fails to address caselaw holding that would not excuse the lack of compliance with Rule 13. See *In re M.B.*, 2019 IL App (2d) 181008, ¶ 18, 129 N.E.3d 631 ("[A]lthough the court may require an attorney to withdraw, the withdrawal must follow 'Supreme Court Rules.' "); *In re S.P.*, 2019 IL App (3d) 180476, ¶ 43, 123 N.E.3d 1101 ("[T]he mandate of [the statute] is that a 'withdrawal or substitution' comport with applicable

- 13 -

supreme court rules, with no distinction made between counsel seeking leave to withdraw and the [circuit] court requiring counsel to withdraw.").

¶ 33 Based upon the record and arguments presented, we find the circuit court erred when it discharged respondent's counsel without requiring compliance with Rule 13. This, in turn, led to the court conducting a hearing on the petitions to terminate parental rights where neither respondent nor counsel to represent her were present.

¶ 34 As the State acknowledges, respondent's due process rights are implicated by the way the circuit court discharged her counsel and then proceeded to a hearing on the petitions to terminate her parental rights. The State maintains respondent's due process rights were not infringed upon given its interest in the timely adjudication of the minors' cases, the absence of any potential defense to the unfitness and best-interest allegations, and respondent's lack of diligence in seeking information about the minors' cases.

¶ 35 It is well established parents have a fundamental liberty interest in raising and caring for their children. *In re M.H.*, 196 Ill. 2d 356, 362, 751 N.E.2d 1134, 1139 (2001); see *Br. M.*, 2021 IL 125969, ¶ 40. As the United States Supreme Court has stated, "When the State initiates a parental rights termination proceeding, it seeks not merely to infringe that fundamental liberty interest, but to end it." *Santosky v. Kramer*, 455 U.S. 745, 759 (1982). As a result, "procedures involved in terminating parental rights must meet the requisites of the due process clause." *M.H.*, 196 Ill. 2d at 363.

¶ 36 This court will generally consider three factors in determining whether a parent's due process rights have been infringed upon:

> "(1) the private interest implicated by the official action; (2) the risk
>
> of an erroneous deprivation of that interest through the proceedings

used, and the probable value, if any, of additional or substitute safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute safeguards would entail." *In re Andrea F.*, 208 Ill. 2d 148, 165, 802 N.E.2d 782, 792 (2003) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

¶ 37 Applying these factors to the present case, we conclude respondent was denied due process when the circuit court discharged her counsel without requiring compliance with Rule 13 and then proceeded to a hearing on the petitions to terminate her parental rights without her or counsel to represent her being present. As indicated, a parent has a fundamental liberty interest in raising and caring for their children which will not be lightly terminated. *M.H.*, 196 Ill. 2d at 362. We find the risk of an erroneous deprivation of that interest as a result of the lack of compliance with Rule 13 and the holding of a hearing on the petitions to terminate parental rights where neither respondent nor counsel to represent her were present is great given the lack of notice to respondent of the withdrawal of her counsel, the relatively short period between the withdrawal and the hearing on the petitions, and the complete absence of any representation of respondent at the hearing on the petitions. While we agree requiring compliance with Rule 13 and ordering a continuance of the hearing on the petitions upon determining neither respondent nor counsel to represent her were present would have extended the proceedings, we are not convinced the burden of requiring compliance with an established supreme court rule and ordering a short continuance to assure the necessary procedural requirements were met would have been onerous.

¶ 38 We recognize respondent has not presented a defense to the unfitness and best-interest allegations and has demonstrated a general lack of diligence in seeking information about

the minors' cases. We are not convinced these facts change our conclusion. First, with respect to the absence of a defense, the evidence presented by the State at a minimum could have been subject to adversarial testing through cross-examination and argument. Second, with respect to respondent's lack of diligence in seeking information about the minors' cases, the record shows respondent nevertheless cooperated with DCFS following the first appearance and sought legal assistance approximately two months after the first appearance and less than one month after the hearing on the petitions to terminate her parental rights.

¶ 39 We note the State highlights respondent had knowledge of the scheduled hearing on the petitions to terminate her parental rights according to the minors' caseworker. The caseworker's testimony on this matter, however, is far from clear. In any event, the State fails to explain how this knowledge would affect our analysis. We are not convinced the caseworker's purported oral statements to respondent about the hearing on the petitions sufficiently minimized the risk of an erroneous deprivation of her fundamental liberty interest through the proceedings used by the circuit court.

¶ 40 Because we conclude respondent was denied due process when the circuit court discharged her counsel without requiring compliance with Rule 13 and then proceeded to a hearing on the petitions to terminate her parental rights without her or counsel to represent her being present, we find the court's judgments must be reversed and the matters remanded for further proceedings. We need not, therefore, consider respondent's additional challenges.

¶ 41 Almost 20 years ago, this court reached the same result when addressing an issue similar to the one now before this court. In *In re Robert S.*, 357 Ill. App. 3d 214, 218, 828 N.E.2d 899, 901-02 (2005), a case cited by neither party, we held the circuit court erred when it discharged the parent's counsel without requiring compliance with Rule 13 and then immediately conducted

a hearing on the petition to terminate parental rights. Although not addressed in a due process framework, we found the court's error required a reversal and remand for further proceedings. *Id.* Our prior decision, therefore, supports our decision in this case.

¶ 42         Following the issuance of our decision in *Robert S.*, the Third District reached a different result when addressing a similar issue. In *In re A.M.*, 402 Ill. App. 3d 720, 725, 932 N.E.2d 82, 86-87 (2010), a case relied upon by the State but not addressed by respondent, the Third District held, although the circuit court's decision to allow the parent's counsel to be "excused" from attending the proceedings until the parent had contacted counsel or the court increased the risk of an erroneous deprivation of parental rights, the risk of such a deprivation "was minimal when balanced against the State's interest in preventing a delay in adjudicating the [parent's] rights and preserving [the minor's] best interest." In support of its decision, the Third District emphasized, amongst other things, (1) the parent "voluntarily chose" not to contact his counsel, caseworkers, or the court while the case was pending and (2) counsel was "readily available" to the parent "at any time." *Id.* These facts, emphasized by the Third District, demonstrate the facts of the present case are distinguishable, and as a result, we find the Third District's decision does not change our decision.

¶ 43         More recently, the Third District again had the opportunity to consider a similar issue and reached a different result from the one we now reach in this case. In *In re S.P.*, 2019 IL App (3d) 180476, ¶¶ 43-44, 123 N.E.3d 1101, a case cited by neither party, the Third District held, although the circuit court erroneously discharged the parent's counsel without requiring compliance with Rule 13, the error did not constitute a due process violation, as the risk the parent was erroneously deprived of the fundamental right to parent was minimal. In support of its decision, the Third District emphasized, amongst other things, (1) the only proceedings that took

- 17 -

place while the parent was without counsel concerned the other parent's progress in obtaining a parenting assessment and (2) the parent was reappointed counsel at a later proceeding and was fully represented at the hearing on the petition to terminate parental rights. *Id.* ¶ 44. These facts, emphasized by the Third District, demonstrate the facts of the present case are distinguishable, and as a result, we find the Third District's decision does not change our decision.

¶ 44 Shortly after the Third District's decision was issued, the Second District had the opportunity to consider a similar issue and reached the same result we now reach in this case. In *M.B.*, 2019 IL App (2d) 181008, ¶ 18, a case cited by respondent but not addressed by the State, the Second District held the circuit court erred when it discharged the parent's counsel without requiring compliance with Rule 13 and then conducted the fitness portion of the hearing on petition to terminate parental rights without the presence of the parent or counsel to represent the parent. The Second District found the court's error amounted to a due process violation, requiring a vacatur and remand for further proceedings. *Id.* ¶ 21. We note the Second District found *Robert S.* instructive and *S.P.* distinguishable. *Id.* ¶¶ 25-26. The Second District's decision, therefore, supports our decision in this case.

¶ 45 Finally, we must address two recent unpublished orders cited by respondent, only one of which the State addresses. See Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023) (a nonprecedential order entered under Rule 23(b) after January 1, 2021, "may be cited for persuasive purposes"). Before addressing those cases, we remind respondent's counsel for future appeals a copy of any cited unpublished order must be "furnished to all other counsel and the court." *Id.*

¶ 46 First, in *In re T.A.*, 2023 IL App (5th) 220572-U, ¶¶ 22-25, the case cited by respondent but not addressed by the State, the Fifth District held the lack of compliance with Rule 13 prior to the discharge of the parent's counsel amounted to a "clear error" that was "egregious

enough as to challenge the integrity of the judicial process since the error resulted in a hearing where the *** parental fitness was at issue and the [parent] was not present or represented by counsel at the hearing." The Fifth District reversed the circuit court's judgment terminating parental rights and remanded for further proceedings. *Id.* ¶ 28. The Fifth District's decision, although decided under the plain-error doctrine, supports our decision in this case.

¶ 47    Second, in *In re K.W.*, 2023 IL App (3d) 220425-U, ¶ 28, a case cited by respondent and relied upon by the State, the Third District held, although the circuit court erroneously discharged the parent's counsel without requiring compliance with Rule 13, the error did not constitute second-prong plain error, as "there was minimal risk of harm" based on the record presented. In support of its decision, the Third District emphasized, amongst other things, (1) the parent's counsel was allowed to withdraw approximately eight months prior to the filing of the petition to terminate parental rights and (2) the parent personally appeared at the hearing on the petition to terminate parental rights. *Id.* ¶¶ 27-28. These facts, emphasized by the Third District, demonstrate the facts of the present case are distinguishable, and as a result, we find the Third District's decision does not change our decision. Additionally, we note the Third District, despite not finding second-prong plain error related to the lack of compliance with Rule 13, found the failure to reappoint the counsel after the parent appeared at the hearing on the petition to terminate parental rights amounted to plain error, requiring a reversal and remand. *Id.* ¶ 36.

¶ 48    In the end, the result in this case is unfortunate. Similar to the actions of the circuit court in *M.B.*, the circuit court's actions in this case, "taken presumably in the name of efficiency and finality, [have], regrettably, resulted in the opposite: delay, inefficiency, and uncertainty." *M.B.*, 2019 IL App (2d) 181008, ¶ 31. We emphasize, however, the circuit court is not solely responsible for the result—all parties, including respondent's counsel, the State, and the GAL,

should have ensured the necessary procedural requirements were met, especially before proceeding with a hearing on the petitions to terminate respondent's parental rights where neither respondent nor counsel to represent her were present.

¶ 49 The result in this case, moreover, could have been easily avoided. Justice Steigmann, a panel member in this case, issued a special concurrence in *Robert S.* cautioning against allowing appointed counsel to withdraw when a parent is not present in court. *Robert S.*, 357 Ill. App. 3d at 219 (Steigmann, J., specially concurring). Had Justice Steigmann's cautionary advice been heeded, the result in this case would have been avoided, at least to the extent it followed from respondent's challenge to the discharge of her appointed counsel.

¶ 50 Thankfully, the record indicates the minors are placed together in a loving foster home where their needs are being met. We commend the foster parents for their continued efforts in caring for the minors while these cases endure.

¶ 51 III. CONCLUSION

¶ 52 For the reasons stated, we reverse the circuit court's judgment and remand for further proceedings.

¶ 53 Reversed; cause remanded.

*In re R.H.*, 2024 IL App (4th) 241048

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Peoria County, Nos. 21-JA-266, 21-JA-267; the Hon. David A. Brown, Judge, presiding. |
| **Attorneys for Appellant:** | Louis P. Milot, of Peoria, for appellant. |
| **Attorneys for Appellee:** | Jodi M. Hoos, State's Attorney, of Peoria (Patrick Delfino, David J. Robinson, and Connor Goetten, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |